The Federal Home Loan Mortgage Corporation ("Freddie Mac") held a first mortgage on certain apartments. After default by the mortgagor, Freddie Mac purchased the property at a foreclosure sale, on April 28, 1992, for $1,706,460.31. E. David Bates III, Thomas C. Clark, Jr., N. Lee Cooper, and James L. Hubbard (hereinafter referred to collectively as "Bates") purchased the second mortgage on this property and then, pursuant to Ala. Code 1975, § 6-5-253 et seq., and within the one-year period allowed for redemption, sought to redeem the property. Freddie Mac presented Bates with a statement of its asserted price for redemption. Bates disputed the classification of certain expenditures called "permanent improvements" and, further, contended that he was entitled to a credit for diminution in the value of the property.
On April 27, 1993, Bates paid $2,138,268.10 to the circuit clerk, the amount Freddie Mac *Page 926 
had demanded. Upon a joint motion, the trial court entered an order distributing $1,525,000 to Freddie Mac and $3,003.10 to Bates. The trial court then conducted a hearing to determine the distribution of the remaining $610,265 held by the circuit clerk. After listening to the testimony of the witnesses and viewing pictures of the property, the trial court held that the proper amount of money owing to Freddie Mac was $181,460.31,[1] "plus interest thereon at the rate and for the period derived from previous order in this case." Specifically, the trial court entered the following order:
 "Testimony of record reveals this dispute involves income-producing property, received by defendant [Freddie Mac] in a condition needful of immediate repair and/or preservation so as to prevent even further deterioration.
 "With some few exceptions, the bulk of [Freddie Mac's] expenditures and efforts were directed at keeping the flow of income (from rents) as sizable as possible.
 "Indeed, most of the testimony from witnesses for both sides was directed to the character or nature of what components received repair or replacement.
 "Carpets were cleaned or replaced, where necessary, in tenantable units. However, in some four units, which either 'slanted,' or had water damage, these units were 'cannibalized' to maintain livable units (i.e., with perhaps one exception, no slanting or water damaged units were structurally corrected and placed back on the lease market).
 "The common parking and access areas were resurfaced and 'landscaping' was testified to as 'keeping the grass cut.' Such repairs or (improvements?) were, for example, typical of the visible, tenant-attracting efforts pursued by [Freddie Mac].
". . . .
 "Examples, derived from the testimony and evidence, include: 'slanted' apartment units, rotted cornices under the eaves, rotted eaves, rotted studs behind rotted 4' x 8' sheets of exterior panels, rotted decks, stonework facades pulled loose from buildings and standing unattached.
 "In all the above examples, [Freddie Mac] failed to perform needful measures to minimize the damage. And, in all of those above examples, it is elementary that rot progressively worsens, as slow oxidation occurs, spreading itself to other members and, ultimately, reducing wooden components to useless debris.
 "The quid pro quo, of course, of adjudicating that [Freddie Mac] committed 'waste' is the receipt of some $600,000.00 in rental income.
 "Under the applicable sections, Code of Alabama, § 6-5-253 and 6-5-254, plaintiffs have met their burden of proving a predominance of acts of waste with resultant diminution in the value and condition of the property. As to those items of expenditure that might well qualify as 'permanent improvements,' such amounts are insufficient to offset the resultant gross diminution in property value, occasioned by [Freddie Mac's] successful efforts reimbursing itself from the lucrative rental income. This oversimplification of the calculations regarding [Freddie Mac's] expenditure of $143,043 plus $6,963.48 interest thereon is occasioned by testimony that the Jefferson County Board of Equalization amended its valuation of the property from $3,169,520.00 to $1,195,340.00 shortly after plaintiff [Bates] redeemed."
Both Freddie Mac and Bates have appealed, contending that the trial court erred in determining the amount of money required for Bates to redeem the property from Freddie Mac. Basically, Freddie Mac contends that the trial court erred in holding that, because of the allegedly diminished value of the property, Freddie Mac could not recover the value of permanent improvements, whereas Bates contends that the trial court's judgment compensating Freddie Mac amounts to a windfall in view of the amount of diminution Bates alleges in the value of the property.
Under the ore tenus rule, a presumption of correctness accompanies the trial *Page 927 
court's judgment when it has made findings of fact based upon oral testimony without a jury, and its judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong, considering all of the evidence and all inferences that can be logically drawn from the evidence.Clark v. Albertville Nursing Home, Inc., 545 So.2d 9
(Ala. 1989). The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.Clark, supra.
The right to redeem property after foreclosure is conferred exclusively by statute. Wilkes v. Hood, 237 Ala. 72,185 So. 748 (1939). The amount necessary to redeem is determined under Ala. Code 1975, § 6-5-253, which states that anyone entitled to redeem real estate and desiring to redeem must pay or tender the purchase price paid at the sale, with interest, plus all other lawful charges. The lawful charges are the value of permanent improvements, the taxes paid, and insurance premiums paid. § 6-5-253(a)(1)-(3). The statute also allows a credit to be granted: "(3) To the extent the value of the property is diminished when any structures or buildings are changed, removed, demolished, or destroyed by the purchaser . . . during the statutory period of redemption." § 6-5-253(d)(3).
The trial court viewed the photographs showing the damage and the change in the property during Freddie Mac's one year of ownership, and it ruled, based on ore tenus evidence, that any amounts that might qualify as permanent improvements were insufficient to offset the resultant gross diminution in property value. As a result, the trial court compensated Bates by crediting the diminution against the redemption price due Freddie Mac.
We have carefully reviewed the record, and we conclude that the judgment of the trial court is due to be affirmed. There is credible evidence to support the judgment, and we cannot say that it is plainly and palpably wrong, considering all of the evidence and all inferences that can be logically drawn from it.
As concerns Bates's argument concerning certain deposits, we find no merit. The trial court stated that "issues of pet deposits, tenant deposits and unremitted rents were not proved, either as to the amounts or their existence, or [defendant Freddie Mac's] liability."
The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, STEAGALL, KENNEDY and COOK, JJ., concur.
[1] The total amount payable to Freddie Mac, as determined by the trial court, was $1,706,460.31.