969 P.2d 1275

**FEDERAL HOME LOAN MORTGAGE CORPORATION;  and Source One Mortgage Services Corporation, Plaintiffs–Appellants,**

v.

**TRANSAMERICA INSURANCE CO.;  Tig Insurance Co., Associates Financial Services Co. of Hawaii, Inc.;  Lydia R. Swenson;  Deanna Eihua Kupihea;  Defendants–Appellees, and John Does 1–10;  Jane Does 1–10;  Doe Partnerships 1–10;  Doe Corporations 1–10;  and Doe Entities 1–10, Defendants.**

No. 20691.

Supreme Court of Hawai'i.

Dec. 30, 1998.

Peter W. Olson and Maria B. Mazzeo (of Cades Schutte Fleming & Wright) on the briefs, for plaintiffs-appellants Federal Home Loan Mortgage Services Corporation and Source One Mortgage Services Corporation.

Randall Y. Yamamoto, James Kawashima, George B. Apter, and Brian A. Kang (of Watanabe Ing & Kawashima) on the briefs, for defendants-appellees Transamerica Insurance Co. and TIG Insurance Co.

Kevin W. Herring (of Shigemura & Harakal) on the briefs, for defendant-appellee Associates Financial Services Co. of Hawai'i, Inc.

Leonard R. Gouveia, Jr., Wayne S. Sakamoto, J. Patrick Gallagher, Joelle Segawa Kane, and Lili A. Young (of Gallagher and Sakamoto) on the briefs, for defendants-appellees Deanna Leihua Kupihea and Lydia R. Swenson.

MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, J.

The plaintiffs-appellants Federal Home Loan Mortgage Corporation and Source One Mortgage Services Corporation (collectively, FHLMC) appeal from (1) the order denying their motion for partial summary judgment and granting the cross-motion of the defendants-appellees Transamerica Insurance Company and TIG Insurance Company (collectively, Transamerica) for summary judgment, (2) the order denying FHLMC's motion for leave to file first amended complaint, and (3) the judgment entered in favor of Transamerica, the defendant-appellee Associates Financial Services of Hawaii, Inc. (Associates), and the defendants-appellees Lydia R. Swenson and Deanna Leihua Kupihea and against FHLMC. On appeal, FHLMC contends that the circuit court committed reversible error when it: (1) failed to conclude that Transamerica was obligated to pay FHLMC for the full mortgage debt that FHLMC alleged was owed by Swenson and Kupihea at the time of the destruction of the dwelling securing Swenson and Kupihea's mortgage with FHLMC; (2) concluded that (a) the foreclosure sale of the property to FHLMC, which occurred before the destruction of the dwelling, extinguished a portion of Swenson and Kupihea's debt, thereby reducing FHLMC's insurable interest in the property, (b) "[b]y proceeding to obtain the order confirming the sale, FHLMC sought to satisfy or extinguish the mortgage debt to the extent of the amount bid at the sale," (c) FHLMC should have attempted "to rescind its bid or otherwise delay confirmation of the sale based on the fire damage to the property," and (d) Transamerica did not breach its insurance contract by paying FHLMC only the amount of Swenson and Kupihea's debt that was not extinguished by the proceeds of the foreclosure sale; (3) failed to apply the doctrine of equitable estoppel; and (4) denied FHLMC's motion to amend its claims for equitable reformation and equitable estoppel.

FHLMC's points of error on appeal are without merit. Accordingly, we affirm the orders and judgment of the circuit court from which the present appeal is taken.

## I. BACKGROUND

On July 29, 1989, Swenson and Kupihea executed a purchase money mortgage note in favor of Imco Realty Services, Inc., in the amount of $210,000.00. The note was secured by a first mortgage on the property located at 59-052 Kupaoa Place, in Haleʻiwa (the property). On March 15, 1991, Imco assigned the note and mortgage to FHLMC. On August 26, 1993, after Swenson and Kupihea defaulted on the note, FHLMC filed a complaint in the first circuit court to foreclose on the note and mortgage. On May 13, 1994, a decree of foreclosure was entered. The foreclosure order appointed Dale Ho as commissioner and provided that Ho "shall henceforth hold all equitable and legal title to said property, and is hereby authorized ... to sell the property on foreclosure sale to the highest bidder at public commissioner's sale by auction." The order also provided that "Lydia R. Swenson and Deanna Leihua Kupihea and all persons claiming by, through or under them are hereby perpetually barred of and from any and all right, title and interest in the said mortgaged property or any part thereof." On June 24, 1994, FHLMC purchased the property at a public auction for $247,530.49. FHLMC took the property subject to a lien in the amount, *inter alia,* of Associates' second mortgage on the property, the interest owing thereon, and Associates' attorney's fees in the foreclosure action. FHLMC moved to confirm the sale. At a hearing held on July 21, 1994, the motion to confirm was orally granted.

At some point during the foreclosure proceedings, Ho entered into a rental agreement for the property with Bernice Wintermantel, who, in turn, was subletting it to other people. On August 9, 1994, Michael Kersey, one of Wintermantel's tenants, is believed to have set the house on fire following an argument with Wintermantel. On August 24, 1994, FHLMC's mortgage servicing agent deemed the structure a total loss.

Swenson and Kupihea had purchased a homeowner's insurance policy covering the property from Transamerica, which named FHLMC as the first mortgage holder and Associates as the second mortgage holder. The policy insured the dwelling for $233,000.00 and included a "Mortgage Clause," which provided that "[i]f a mortgagee is named in this policy, any loss payable under coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgage is named, the order of payment will be the same as the order or precedence of the mortgages." Additionally, a "LENDER'S LOSS PAYABLE CLAUSE" provided in pertinent part:

> If so indicated in the Declarations and in consideration of the premium at which this policy is written, this policy is amended as follows:
>
> 1. Loss or damage, if any, under this policy, shall be paid to the Payee named on the Declarations, its successors and assigns, hereinafter referred to as "the Lender" in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise vested in a nominee or trustee of said Lender.
>
> 2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended:
>
> > a. by an error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto;
> >
> > b. by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy, by virtue of any mortgage or trust deed[.]

Accordingly, on or about August 24, 1994, FHLMC made a fire loss claim with Transamerica. Notwithstanding the fire damage to the property, however, FHLMC submitted its written order confirming the sale of the property for $247,530.49 for the court's sig-

nature. On October 11, 1994, the order of confirmation was signed and filed.

On November 8, 1994, Transamerica's counsel contacted FHLMC, stating:

Transamerica/TIG wants to proceed with resolution of the claimed fire loss. In order to do so, it needs to know if [FHLMC] intends to rebuild the damaged dwelling. Payment under the policy for a covered loss to the dwelling is on a replacement cost value basis. The insureds, or in this case, the mortgagee, has the option of being paid the actual cash value with any balance for replacement cost value coverage paid upon completion of the dwelling, provided there is written notice of a claim for replacement cost value coverage per the terms of the policy. If the dwelling is not to be rebuilt, then the insurer's obligation is to pay on an actual cash value basis only.

Transamerica made further inquiries as to FHLMC's plans for rebuilding the house on the property on January 13, 1995 and February 22, 1995. In its February 22 letter to FHLMC, Transamerica also sought to determine whether a deficiency judgment had been entered in favor of FHLMC and, if so, its amount. On or about February 22, 1995, FHLMC authorized Prudential Asset Recovery to demolish the burned house.

On March 20, 1995, a deficiency judgment was entered against Swenson and Kupihea in the amount of $13,246.85. Subsequently, pursuant to the actual cash value limit provisions of the policy, Transamerica tendered $13,246.85 to FHLMC in satisfaction of the deficiency judgment against Swenson and Kupihea (which, Transamerica asserted, represented FHLMC's remaining insurable interest), $148,045.87 to Associates in satisfaction of its second mortgage against the property, and the remaining balance of $38,324.01 to Swenson and Kupihea. The cleared property was placed on the market in July 1995 at an asking price of $199,900.00. The property eventually sold for $90,000.00, and, after payment of the expenses of the sale, FHLMC netted $79,616.65.

On December 28, 1995, FHLMC filed the instant action (1) seeking a declaratory judg-ment that it was entitled to full payment of the policy limits for the destruction of the dwelling on the property (Count I) and (2) alleging (a) breach of contract (Count II), (b) breach of covenant of good faith and fair dealing (Count III), and (c) unfair claim settlement practices (Count IV). On January 27, 1997, FHLMC filed a motion for partial summary judgment against Transamerica on Counts I and II. On February 21, 1997, Transamerica filed a cross-motion for summary judgment. On March 13, 1997, a stipulation for dismissal without prejudice was entered as to Count IV of the complaint.

On April 1, 1997, FHLMC moved for leave to file a first amended complaint, seeking to add counts for equitable reformation and equitable estoppel. On April 10, 1997, the circuit court filed an order denying FHLMC's motion for partial summary judgment and granting Transamerica's motion for summary judgment. The order provided in pertinent part:

Based on the particular facts presented in this case, the court finds and concludes, as a matter of law, that Plaintiffs are entitled to recover fire insurance proceeds for the property which was destroyed on August 9, 1994, in an amount equal to the amount of the deficiency judgment entered in favor of FHLMC in Civil No. 93–3327–08. It is significant to the court that FHLMC proceeded to confirm the foreclosure sale and obtain a deficiency judgment with full knowledge of the fire and damage to the property. The court further finds and concludes that the amount of the deficiency judgment represents the remaining debt to Plaintiffs and the remaining insurable interest of Plaintiffs (after the mortgage debt was partially extinguished by the foreclosure sale). See *Fireman's Fund Mortgage Corporation v. Allstate Insurance Company*, 838 P.2d 790 (Alaska 1992); *Kessler v. Government Employees Insurance Company*, 1779 A.2d 492 [179 A.D.2d 492, 579 N.Y.S.2d 13] (N.Y.1992); *Universal Mortg. Co. Inc. v. Prudential Ins. Co.*, 799 F.2d [458] 461 (9th Cir.1986) and *Altus Bank v. State Farm Fire & Cas. Co.*, 758 F.Supp. 567 (C.D.Cal.1991).

FHLMC's reliance on *City of Chicago v. Maynur*, 28 Ill.App.3d 751, 329 N.E.2d 312 (Ill.App.Ct.1975) is misplaced. In the *Maynur* case, the fire which caused the loss to the subject property occurred after the court had approved the sheriff's sale on the property. In the case at bar, the fire occurred before FHLMC obtained the order confirming the foreclosure sale. By proceeding to obtain the order confirming the sale, FHLMC sought to satisfy or extinguish the mortgage debt to the extent of the amount bid at the sale. FHLMC did not attempt to rescind its bid or otherwise delay confirmation of the sale based on the fire damage to the property.

Having determined that Plaintiffs are only entitled to recover fire insurance proceeds in an amount equal to the amount of the deficiency judgment in Civil No. 93–3327–08, and there being no dispute that Transamerica tendered the amount of the deficiency judgment to Plaintiffs on or about May 2, 1995, the court finds and concludes, as a matter of law, that there is no breach of the insurance contract in this case.

In view of the above, the court need not address the issue of whether Plaintiffs' claims are barred by the suit limitation clause in the insurance policy.

Finally, with respect to Plaintiffs' proposed amendment of the Complaint to include a claim for reformation, the court believes that reformation of the foreclosure sales price of the property is not appropriate in this case because FHLMC proceeded to confirm the sale with the knowledge of the fire damaged condition of the property. This is not a case in which a party bid and sought confirmation of the sale based on a mistaken belief that the subject property was undamaged. Under the circumstances of this case, it appears that the interests of justice do not require reformation. Therefore, the court declines to delay ruling on these motions until after Plaintiffs' Motion for Leave to Amend Complaint has been decided.

Based on the foregoing, Defendants Transamerica Insurance Company and TIG Insurance Company's Cross–Motion

for Summary Judgment filed on February 21, 1997 is granted and Plaintiffs' Motion for Partial Summary Judgment is denied. Judgment shall be entered in favor of Defendants Transamerica Insurance Company and TIG Insurance Company and against Plaintiffs Federal Home Loan Mortgage Corporation and Source One Mortgage Services Corporation on all claims presented in the Complaint filed herein.

Following a hearing on April 30, 1997, the circuit court denied FHLMC's motion for leave to file a first amended complaint, stating that its ruling was based on its earlier order granting Transamerica's motion for summary judgment. On May 14, 1997, the written order denying FHLMC's motion to file a first amended complaint and the judgment in favor of Transamerica, Associates, Swenson, and Kupihea and against FHLMC were entered.

This timely appeal followed.

## II. STANDARDS OF REVIEW

### A. Motion For Summary Judgment

We review [a] circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Id.* (citations and internal quotation marks omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61,

647 P.2d 713, 716 (1982) (citations omitted).

*Konno v. County of Hawai'i,* 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997) (quoting *Dunlea v. Dappen,* 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996)) (brackets in original). "The evidence must be viewed in the light most favorable to the non-moving party." *State ex rel. Bronster v. Yoshina,* 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)). In other words, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion]." *Maguire,* 79 Hawai'i at 112, 899 P.2d at 395 (citation omitted).

*State Farm Mut. Auto Ins. Co. v. Murata,* 88 Hawai'i 284, 287–88, 965 P.2d 1284, 1287–88 (1998) (quoting *Estate of Doe v. Paul Revere Ins. Group,* 86 Hawai'i 262, 269–70, 948 P.2d 1103, 1110–11 (1997)) (brackets in original).

### B. *Denial Of Motion To Amend A Complaint*

"We have said that the grant or denial of leave to amend under [Hawai'i Rules of Civil Procedure (HRCP)] Rule 15(a) [ (1996) ] is within the discretion of the trial court." *Associated Eng'rs & Contractors v. State,* 58 Haw. 187, 218, 567 P.2d 397, 417 (1977) (quoting *Bishop Trust Co., Ltd. v. Kamokila Dev. Corp.,* 57 Haw. 330, 555 P.2d 1193 (1976)). In *[Bishop Trust,]* . . . we referred to the following statement of the general standard employed under Rule 15(a) by the federal courts:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules requires, be "freely given." (*Fo-*

*man v. Davis,* 371 U.S. 178, at 182, 83 S.Ct. 227, at 230, 9 L.Ed.2d 222).

*Id.* at 218–19, 567 P.2d at 417. However, in interpreting the analogous federal rule,[1] the federal courts have observed that "[a] motion for leave to amend is not a vehicle to circumvent summary judgment." *Schlacter–Jones v. General Tel.,* 936 F.2d 435, 443 (9th Cir. 1991); *see also Coplin v. Conejo Valley Unified School Dist.,* 903 F.Supp. 1377, 1388 (C.D.Cal.1995) ("It is generally inappropriate to grant leave to amend a complaint while summary judgment is pending." (citing *Schlacter, supra*)); *Felde v. City of San Jose,* 839 F.Supp. 708, 711 (N.D.Cal.1994) ("[T]he city has a pending dispositive motion before this court. To add a cause of action at this point would delay without sufficient justification the final resolution of this case." (citing *Schlacter, supra*)).

### III. DISCUSSION

### A. *FHLMC's Recovery Under The Transamerica Policy Was Limited To The Amount Of The Deficiency Judgment Entered By Swenson And Kupihea.*

FHLMC asserts that "[t]he circuit court's determination that [FHLMC's] recovery is limited to the amount of the deficiency judgment rather than the full amount of the unpaid mortgage debt at the time of the loss is contrary to the better reasoned case authority." The "better reasoned" cases cited in support of its position by FHLMC "hold that when a fire loss occurs during the pendency of foreclosure proceedings, the amount of the mortgagee's recovery under a fire insurance policy turns on the sequence of two events: the fire loss and the foreclosure sale." Admittedly, in cases such as *City of Chicago v. Maynur,* 28 Ill.App.3d 751, 329 N.E.2d 312 (Ill.Ct.App.1975), courts of other jurisdictions have held that where a loss follows a foreclosure sale, a mortgagee who purchased the foreclosed property was entitled to full recovery of the mortgage indebt-

---

**1.** Rule 15(a) of the Federal Rules of Civil Procedure is functionally identical to Rule 15(a) of the HRCP. " 'Where a Hawai'i rule of civil procedure is identical to the federal rule, the interpretation of this rule by federal courts is highly persuasive.' " *Wong v. Takeuchi,* 87 Hawai'i 320, 329, 955 P.2d 593, 602 (1998) (quoting *Collins v. South Seas Jeep Eagle,* 87 Hawai'i 86, 88, 952 P.2d 374, 376 (1997) (citation and internal quotation marks omitted)).

edness at the time of the sale. However, these cases are distinguishable from the matter before us inasmuch as they arise in states whose mortgage foreclosure statutes differ from those of Hawai'i in one critical respect—they recognize a right of redemption. As explained by the Illinois Appellate Court:

> If the mortgagee purchases the property at a foreclosure sale before the fire loss, "the amount bid at the foreclosure was for the property in an undamaged condition and the mortgagee required the insurance proceeds to restore the property to the condition it was in at the time of the foreclosure. * * * [A] mortgagee who has foreclosed has a type of ownership *of which he may be divested until the period of redemption has expired.* * * * Why should the mortgagee, so long as its ownership may be only temporary, be required to procure an owner's policy in order to protect itself adequately?" (*City of Chicago v. Maynur* (1975), 28 Ill.App.3d 751, 755, 329 N.E.2d 312, 315.) In *Trustees of Schools v. St. Paul Fire & Marine Insurance Co.* (1920), 296 Ill. 99, 129 N.E. 567, the Illinois Supreme Court upheld the right of a mortgagee to recover the full loss suffered from a fire occurring after a foreclosure sale at which the mortgagee purchased the property. The court reasoned that *because a foreclosure was not complete until the redemption period had passed,* the mortgagee continued to have an insurable interest as mortgagee. *Maynur* further explained that "the mortgagee's acquisition of the property through foreclosure *results in an increase in the mortgagee's interest rather than a change of ownership.* 28 Ill.App.3d 751, 754, 329 N.E.2d 312, 315.

On the other hand, when the loss precedes the foreclosure sale,

> "the mortgagee has an election as to how he may satisfy the mortgage indebtedness by two different means. He may look to the insurance company for payment as mortgagee * * * and may recover, up to the limits of the policy, the full amount of the mortgage debt at the time of the loss. In this event he would have no additional recourse against the mortgagor for the reason that his debt has been fully satisfied.

> The second alternative available to the mortgagee is satisfaction of the mortgage debt by foreclosure. If the mortgagee elects to pursue this latter option, and the foreclosure sale does not bring the full amount of the mortgage debt at the time of the loss, he may recover the balance due under the insurance policy as owner.
>
> * * * * * *
>
> [A]t the time of, and immediately after the fire loss, plaintiff-mortgagor is the creditor of the owner, the plaintiff-mortgagee having had a security for that debt in the form of a mortgage on the property and a claim for the loss on the insurance policy. *But in no event is the plaintiff-mortgagee due to collect more than the debt secured.* * * * When a mortgagee forecloses and at the sale he collects the *full* amount of his debt, he is no longer a creditor as his debt is paid. [This] rationale appears to be in the mainstream of judicial thought throughout the country."

*Nationwide Mutual Fire Insurance Co. v. Wilborn* (1973), 291 Ala. 193, 198, 279 So.2d 460, 463, citing 5A Appleman, Insurance Law and Practice § 3403, at 301–3[sic] (1970); accord, *White v. United States Fidelity and Guaranty Co.* (1974), 21 Ill.App.3d 588, 316 N.E.2d 131.

*Great–West Life Assurance Co. v. General Accident Fire & Life Assurance Corp.*, 116 Ill.App.3d 921, 72 Ill.Dec. 297, 452 N.E.2d 550, 556–57 (Ill.App.Ct.1983) (some brackets and emphases in original and some added). *See also Estate of Brindisi v. State Farm Ins. Co.*, 149 Misc.2d 390, 564 N.Y.S.2d 985, 987 (N.Y.Sup.Ct.1991) (holding that mortgagee was entitled to full insurance proceeds when fire occurred between foreclosure sale and delivery of deed because (1) "[i]t [was] not clear if the mortgagee has any right to rescind the sale or move to abate the purchase price" and (2) "[w]hile the equity of redemption of the defendants ... was not technically extinguished until the referee's deed was delivered, the defendants ... did not exercise the equity of redemption at any

time[.]"); *Tech Land Development, Inc. v. South Carolina Ins. Co.*, 57 N.C.App. 566, 291 S.E.2d 821, 824 (N.C.Ct.App.1982) ("Where the damage occurs *after* approval of the fire sale and before expiration of the mortgagor's right to redeem, courts have allowed the purchasing mortgagee to recover *all* the insurance proceeds should the mortgagor fail to redeem within the time period." (Emphases in original.)).

◼ From the reasoning set forth in the above-cited decisions, two principles emerge: (1) satisfaction of the debt terminates a mortgagee's insurable interest; and (2) the insurable interest of a "purchasing" mortgagee will continue *until the expiration of the statutory period of redemption.* No such redemptive period is recognized in the Hawai'i Revised Statutes (HRS).

◼ Transamerica's argument that Hawai'i has long recognized an equitable right of redemption is irrelevant here. Hawai'i law is based on the lien theory of mortgages. *See* HRS § 506–1 (1993) ("Every transfer of an interest in real property or fixtures made as security for the performance of a another act or subject to defeasance upon the payment of an obligation, whether the transfer is made in trust or otherwise, is to be deemed a mortgage and shall create a lien only as a security for the obligation and shall not be deemed to pass title."); *see also Adair v. Kona Corp.*, 51 Haw. 104, 110, 452 P.2d 449, 453 (1969) ("Hawaii has espoused the lien theory of mortgages since 1939[.]").[2] As the New Jersey Supreme Court explained in *Chase Manhattan Bank v. Josephson*, 135 N.J. 209, 638 A.2d 1301 (N.J.1994), in a lien theory state, the equitable right of redemption is terminated upon an order of foreclosure:

New Jersey follows a "lien" as opposed to a "title" theory of mortgages. Execution of the mortgage does not convey to the mortgagee title that is defeasible on payment of the secured debt, but rather con-

fers on the mortgagee a lien on the property that secures the debt. Thus, on default, the mortgagee has only a possessory interest, and ownership of the premises remains subject to the mortgagor's equity of redemption. *In order to terminate the mortgagor's equity of redemption, the mortgagee must bring an action to foreclose the mortgage, obtain a writ of execution for sale of the mortgaged property, and sell the property on foreclosure.* The foreclosing mortgagee obtains an ownership interest in the property only when the mortgagee purchases the property at the foreclosure sale.

*Id.* at 1305.

In some states, a statutory right of redemption extends the mortgagor's right to redeem for a period following the foreclosure sale. *See, e.g., Federal Home Loan Mortgage Corp. v. Bates*, 644 So.2d 925, 927 (Ala. 1994) ("The right to redeem property after foreclosure is conferred exclusively by statute."); *Buell v. White*, 908 P.2d 1175, 1177 (Colo.App.1995) ("The right of redemption must be exercised in strict compliance with the statutory terms and depends entirely upon the provisions of the statute creating the right.") (Citing *Johnson v. Smith*, 675 P.2d 307 (Colo.Ct.1984).); *West Des Moines State Bank v. Pameco*, 501 N.W.2d 555, 557 (Iowa Ct.App.1993) ("After the foreclosure sale, the mortgage debtor has the right of redemption if the statute so provides. The right to redeem is purely statutory." (Citing *First National Bank v. Matt Bauer Farms Corp.*, 408 N.W.2d 51, 53 (Iowa 1987).)). Other states empower a court to establish the terms under which a mortgagor may redeem in the foreclosure judgment. *See, e.g., Emanuel v. Bankers Trust Co., N.A.*, 655 So.2d 247, 249 (Fla.Dist.Ct.App.1995) ("[S]ection 45.0315, Florida Statutes (1993), explicitly empowers a court in the final judgment of foreclosure to fix the terms in which the mortgagor may redeem.") The HRS,

---

2. Until 1972, the common law remedy of foreclosure by entry and possession was recognized by HRS § 667–11 (1968). HRS § 667–13 (1968) and its precursors recognized a one-year redemption period in connection with that practice. However, HRS § 667–13 was repealed in 1972, when the concomitant repeal of HRS

§ 667–11 put an end to foreclosure by entry and possession in this state. *See* 1972 Haw. Sess. L. Act 90, § 10, at 363; Hse. Stand. Comm. Rep. No. 330–72, in 1972 House Journal, at 772; Hse. Spec. Comm. Rep. No. 9, in 1972 House Journal, at 1116; Report of the committee on Coordination of Rules and Statutes, § 667.

however, contain no statute authorizing a post-foreclosure right of redemption.

Furthermore, in the matter before us, the foreclosure order entered by the circuit court on May 13, 1994 expressly divested Swenson and Kupihea "and all persons claiming by, through or under them" of "any and all right, title and interest in the said mortgaged property or any part thereof." Accordingly, the first principle that emerges from *Maynur, Great–West Life, Brindisi,* and *Tech Land* is controlling, and we hold as follows: FHLMC may recover only the amount of Swenson and Kupihea's debt that was not extinguished by FHLMC's successful bid at the foreclosure sale.

The validity of our holding is reinforced by the fact that, at any time between the occurrence of the fire on August 9, 1994 and entry of the written order on October 11, 1994 FHLMC could have moved to rescind or reform its bid or set aside the foreclosure sale. It did none of these things. Instead, it submitted its written order confirming the sale—which expressly provided that "the sale of the subject property to FEDERAL HOME LOAN MORTGAGE CORPORA-TION [for] $247,530.49 is fair and equita-ble"—to the circuit court for signature. Moreover, FHLMC set the asking price for the property after demolition and clearing of the burned dwelling at $199,000.00, which evidences FHLMC's belief, at the time it sought entry of the written order confirming the sale, that, even after destruction of the structure, the land alone was worth approxi-mately eighty percent of the amount bid by FHLMC at the foreclosure sale.

Finally, limiting FHLMC's recovery from Transamerica to the amount of the deficiency judgment entered against Kupihea and Swenson is consistent with case law from other states that, like Hawai'i, do not afford mortgagors a statutory right of redemption upon foreclosure. For example, in *Universal Mortgage Co., Inc. v. Prudential Insurance Co.,* 799 F.2d 458, 460 (9th Cir.1986), the United States Court of Appeals for the Ninth Circuit, interpreting California law, observed that "[a] full or partial extinguishment of a mortgage debt, *whether prior or subsequent to loss,* precludes, to the extent thereof, any

recovery on a loss by the loss payable mort-gagee." (Emphasis in original.) The *Uni-versal Mortgage* court based its conclusion on the reasoning of *Reynolds v. London & Lan-cashire Fire Insurance Co.,* 128 Cal. 16, 60 P. 467, 469 (1900), noting that,

> [i]n *Reynolds,* a mortgagee entered a full credit bid at a foreclosure sale *before* any damage to the insured property occurred. The court determined that a mortgagee named in the insurance policy could not recover after making such a bid because the mortgagee's interest on the policy was limited to the lien or debt. Once the lien or debt was fully extinguished by the full credit bid, so was the insurable interest.

*Universal Mortgage Co.,* 799 F.2d at 460 (emphasis added). *See also Fireman's Fund Mortgage Corp. v. Allstate Ins. Co.,* 838 P.2d 790, 796–97 (Alaska 1992) ("Fireman's Fund argues that we should disregard its offset bid because the bid was made in ignorance of the property's damaged condition.... However, we believe it would be a mistake to simply disregard the offset bid in this situation.... Fireman's Fund had a contractual right to the insurance proceeds which vested at the time of the fire. The subsequent foreclosure did not change this contractual right. How-ever, at the foreclosure sale a few hours later, Fireman's Fund essentially 'spent' $75,486.15 of its total indebtedness in making its offset bid. This offset bid left Fireman's Fund with an outstanding indebtedness of approximately $18,500[.00].... Under ... the great weight of authority, Fireman's Fund is only entitled to recover an amount of the insurance proceeds sufficient to satisfy this outstanding debt." (Citations omitted.)); *Minnesota Fed. Sav. & Loan Ass'n v. Iowa Nat'l Mut. Ins. Co.,* 372 N.W.2d 763, 767 (Minn.Ct.App.1985) (holding that mortgagee, who failed to make insurance payments pur-suant to terms of an escrow agreement with mortgagor, causing policy to lapse, and who entered into cash settlement with mortgagor in addition to cancellation of outstanding mortgage, in satisfaction of the mortgagor's claims, was entitled to recover only the amount of outstanding debt at time of loss, rather than total value of loss to property, because "[t]he amount payable as 'interests

may appear' under the mortgage clause of an insurance contract is measured by the indebtedness which the mortgagor owes under his note and mortgage").

B. *Transamerica Is Not Equitably Estopped From Paying FHLMC Less Than The Actual Cash Value Of The Property At The Time Of The Loss.*

■ Next, FHLMC claims that the circuit court erred in failing to apply the doctrine of equitable estoppel to preclude Transamerica from paying less than the actual cash value of the property to it, inasmuch as, in letters dated November 8, 1994 and after, Transamerica's counsel "represented that FHLMC would at least be paid the actual cash value for the dwelling." FHLMC's argument is not persuasive.

■ A party seeking to invoke equitable estoppel must show that it has detrimentally relied on the representation of the party sought to be estopped and that the reliance was reasonable. *See State Farm Mut. Auto. Ins. Co. v. GTE Hawaiian Tel. Co.*, 81 Hawai'i 235, 244, 915 P.2d 1336, 1345 (1996). As FHLMC acknowledges, the first correspondence from Transamerica allegedly representing that it would pay FHLMC the actual cash value of the property did not occur until November 8, 1994—approximately four weeks *after* entry of the written order confirming the sale. FHLMC does not offer an explanation as to how, a month before they were made, it relied on these statements in making its decision not to seek to rescind its bid or delay confirmation of the sale. Furthermore, assuming reliance *arguendo,* the element of detriment is questionable here. FHLMC bought the property at the foreclosure sale subject to Associates' second mortgage. Inasmuch as the insurance proceeds were used to satisfy the second mortgage, FHLMC gained through the insurance proceeds a property free and clear of all other liens. Finally, the record is not clear that Transamerica's statements to FHLMC affirmatively represented that Transamerica would pay the full cash value under the policy to FHLMC, inasmuch as all of the statements were made in the context of communications requesting more information in order to determine precisely what proceeds were owing to FHLMC under the policy.

C. *The Circuit Court Did Not Err In Denying FHLMC's Motion To Amend Its Claims For Equitable Reformation And Equitable Estoppel.*

■ Finally, FHLMC argues that "[t]he circuit court abused its discretion when it denied Plaintiff's motion to amend the Complaint to assert counts of equitable reformation and equitable estoppel." While HRCP Rule 15(a) provides that leave to amend the pleadings should be "freely given when justice so requires," the trial court does not abuse its discretion in refusing leave to amend where such an amendment would be futile. As discussed in section III.B, *supra,* FHLMC cannot make out a claim for equitable estoppel. As for FHLMC's request to add a count for equitable reformation to its complaint, the circuit court ruled:

> Finally, with respect to Plaintiffs' proposed amendment of the Complaint to include a claim for reformation, the court believes that reformation of the foreclosure sales price of the property is not appropriate in this case because FHLMC proceeded to confirm the sale with the knowledge of the fire damaged condition of the property. This is not a case in which a party bid and sought confirmation of the sale based on a mistaken belief that the subject property was undamaged. Under the circumstances of this case, it appears that the interests of justice do not require reformation. Therefore, the court declines to delay ruling on these motions until after Plaintiffs' Motion for Leave to Amend Complaint has been decided.

On the facts in this record, the circuit court's ruling did not constitute an abuse of discretion.

### IV. CONCLUSION

For the reasons outlined above, we affirm the orders and judgment of the circuit court.