KAUILANI EWA, LLC, a Hawai`i limited liability company, Plaintiff-Appellant,
v.
ELAINE L. CHANG, individually and as Trustee, and E.L.C. COMPANY, LLC, a Hawai`i limited liability company, Defendants-Appellees, and
PHILIP R. BROWN, doing business as the Law Offices of Philip R. Brown; and DOES 1-10, Defendants.
No. 28223.
Intermediate Court of Appeals of Hawaii.
May 22, 2009.
On the briefs:
Gary Victor Dubin, for Plaintiff-Appellant.
Steven M. Egesdal, (Carlsmith Ball, LLP), for Defendants-Appellees.

MEMORANDUM OPINION
WATANABE, Acting C.J., FOLEY, and NAKAMURA, JJ.
Plaintiff-Appellant Kauilani Ewa, LLC (Kauilani or Plaintiff) appeals from the following decisions entered by the Circuit Court of the First Circuit[1] (circuit court) in favor of Defendants-Appellees Elaine L. Chang (Chang), individually and as Trustee, and E.L.C. Company, LLC (ELC) (collectively, Defendants): (a) the July 28, 2006 "Order Granting [Defendants'] Motion for Summary Judgment on Plaintiff's Complaint Filed May 18, 2006" (order granting summary judgment); (b) the August 14, 2006 "Judgment"; and (c) the September 20, 2006 "Order Denying Plaintiff's Motion for Reconsideration of and to set Aside August 14, 2006 Judgment, and for Leave to File First Amended Complaint Filed August 24, 2006" (order denying reconsideration and leave to amend).
We affirm.

BACKGROUND

A.
Pursuant to an agreement dated April 19, 2005 (Agreement) and made effective as of March 5, 2005, ELC agreed to sell to Kyle Dong (Dong) and Dong agreed to purchase from ELC, all of ELC's interest in the following property, for a purchase price of $5,000,000:
 All of ELC's right, title and interest in approximately five acres of fee simple property in `Ewa Beach, Hawai`i (`Ewa Beach property) on which ELC was developing a subdivision consisting of the development and construction of twenty-nine single-family residences (Project);
 All of ELC's plans, drawings, and specifications (Plans) prepared for the Project, and any permits obtained by ELC or applications prepared by ELC in anticipation of applying for permits;
 Two completed model homes, currently under construction at the subdivision; and
 Specific construction materials from ELC's China factory for twenty-seven homes.
Under the Agreement, $1,500,000 of the purchase price was attributable to the purchase of the `Ewa Beach property, and $3,500,000 was attributable to (1) ELC's good will, efforts, time, costs, and expenses to initiate development of the Project, including the Plans; (2) construction materials for the twenty-seven homes; and (3) completion of the two model homes under construction. The Agreement required Dong to deposit with an escrow agent an initial deposit of $2,500,000 of the purchase price "within twenty-four (24) hours of the execution of this Agreement by both parties, but not later than noon on Friday, April 22, 2005," and the remaining balance of $2,500,000 on or before July 15, 2005. Dong paid the initial deposit of $2,500,000.
Pursuant to a June 2, 2005 Assignment and Amendment of Agreement (Amendment), Dong assigned all of his right, interest, and obligations in the Agreement to Kauilani, Dong's company. Additionally, Kauilani and/or Dong agreed to deposit, on or before June 6, 2005, the sum of $1,500,000, whereupon "escrow shall record a deed conveying title [to the `Ewa Beach property] from [ELC] to Kauilani[.]" Furthermore, the Amendment provided that the $1,000,000 remaining balance of the purchase price shall be held by Dong's lender, Finance Factors, Limited, and used for payment of the construction materials for the homes to be built. The Amendment also added various provisions to the Agreement, including details as to how the construction materials for each home would be ordered, manufactured, shipped, paid for, inspected, and used.
Title to the `Ewa Beach property was transferred to Kauilani pursuant to the Agreement and Amendment, following Kauilani's payment of $4,000,000 of the purchase price. However, a dispute subsequently arose regarding the construction materials, which Kauilani alleged were defective, and Kauilani withheld payment from ELC of the $1,000,000 for construction materials.

B.
On September 8, 2005, in Civil No. 05-1-1608-09 (first case), ELC filed a complaint against Dong and Kauilani that sought, among other claims, immediate rescission of the Agreement and Amendment, a return to ELC of title to the `Ewa Beach property, and the imposition of a constructive trust and other equitable relief with respect to Kauilani's interest in the `Ewa Beach property.
On September 26, 2005, ELC recorded a notice of pendency of action (NOPA) as to the `Ewa Beach property with the Office of the Assistant Registrar of the Land Court, pursuant to Hawaii Revised Statutes (HRS) §§ 634-51 (Supp. 2008)[2] and 501-151 (1993). The NOPA stated that the objectives of the complaint were, in part, to obtain, "[r]escission of the Agreements between ELC and [Dong and Kauilani] and a declaration that title to the Property must be returned to ELC."
On January 30, 2006, ELC filed a first amended complaint, which further detailed the rescission claim and stated:
41. ELC transferred its title to [Kauilani] in reliance on [Kauilani's] promise to pay the remaining One Million Dollars owed under the April 19th Agreement and the Amended Agreement.
42. [Kauilani] materially . . . breached their duties under the April 19th Agreement and the Amended Agreement, including without limitation, the duty to pay the remaining One Million Dollars to ELC and the duty to use the steel framed houses for the Project owed under the April 19th Agreement and the Amended Agreement.
43. On August 12, 2005 and September 2, 2005, [ELC] demanded that [Kauilani] honor their obligations under the April 19th Agreement and the Amended Agreement or [ELC] would be forced to seek damages and/or equitable remedies. [Kauilani] refuse [s] to honor, undertake, and perform [its] contractual obligations to [ELC].
44. [ELC] has already paid substantial sums for the construction materials, some of which construction materials [Kauilani] wrongfully ha [s] taken and ha [s] in their possession.
45. Because of [Kauilani's] (i) failure to pay the final payment of One Million Dollars to [ELC] and (ii) refusal to use [ELC's] steel framed houses in the Project, [ELC] is entitled to immediate rescission of the April 19th Agreement and the Amended Agreement including:
a. The return of title of the [`Ewa Beach property] from [Kauilani to ELC].
(Emphases added.)
ELC filed an amended NOPA on January 30, 2006 (amended NOPA). The amended NOPA provided notice that ELC's first amended complaint sought to " [r]escind[] the April 19th Agreement and the Amended Agreement" and to declare that "title to the [`Ewa Beach property] must be returned to ELC."
On March 2, 2006, the circuit court[3] entered an order granting summary judgment in favor of Dong and Kauilani as to seven of nine claims alleged in ELC's amended complaint, including ELC's rescission claim, and denying summary judgment as to the remaining claims without prejudice.[4] On the same day, the circuit court entered an order expunging the NOPA and amended NOPA.

C.
On January 17, 2006, in Civil No. 06-1-0069-01, the case underlying this appeal (second case), Kauilani filed its "Complaint for Malicious Abuse of Process" against Chang, ELC, and the attorney for ELC in the first case.[5] The complaint in the second case alleged, in relevant part, as follows:
4. ... [Defendants] caused to be filed a [NOPA] on September 26, 2005, recorded at the Land Court in the State of Hawaii on September 26, 2005, as Document No. 3332074 [.]
. . . .
22. ... [I]n a malicious attempt to extort monies from [Kauilani, Defendants] . . . caused said Lawsuit to be brought against [Kauilani], knowingly falsely claiming that [Kauilani] had incongruously breached said Agreement and Assignment/Amendment by refusing to pay for said defective construction materials.
23. Additionally, [Defendants] caused ELC in said Lawsuit to maliciously couple its breach of contract claims with a rescission Count claiming that said Agreement and said Assignment/Amendment should be rescinded and that title to the Subject Property be ordered "returned to ELC (Complaint, Prayer for Relief (B)), and even though the unidentified Trust that actually previously held the title and had transferred the title to [Kauilani] was not even made a party to said Lawsuit.
24. Furthermore, [Defendants] then caused ELC to simultaneously file and record said [NOPA and amended NOPA], knowing that the filing and recording of same would in and of itself put [Kauilani] in breach of and unable to fulfill its individual lot purchase agreements . . . with said third party purchasers and thus to default on its related construction loan.
. . . .
28. [Defendants'] rescission claims . . . demanding a return of title, was completely meritless when filed and known by [Defendants] to have been meritless, for not only was title to the subject property voluntarily conveyed pursuant to contract . . ., but as a matter of law, . . . newly-registered [sic] Land Court titles ("TCTs") are conclusive and unimpeachable ... no matter the nature of a seller's remorse or a seller's alleged contract or tort claims.
29. Moreover, all Ten Counts in said Complaint are based on one single event, Paragraphs 13 through 17 and are frivolous: [Kauilani's] alleged wrongful rejection of certain construction materials and nonpayment therefor [.]
. . . .
31. Breach of contract, moreover, as a matter of law, does not even give one a right to file a notice of pendency of action in this State; nevertheless, [Defendants] deliberately caused ELC to maliciously file said [NOPA and amended NOPA] as well.
. . . .
35. Said wrongful [NOPA and amended NOPA] has similarly unfairly clouded [Kauilani's] title to the Subject Property here, disrupted [Kauilani's] sales and finances, and caused [Kauilani] extensive damages, willfully and maliciously and intentionally and recklessly caused to be filed conspiratorially by [Defendants], primarily for the improper ulterior motive and for the sole and express collateral purpose of harassing [Kauilani] and bringing wrongful financial pressure upon [Kauilani] in an attempt to extort monies from [Kauilani], notwithstanding the delivery of said rejected, defective construction materials.
. . . .
37. As a direct and proximate cause and result of said malicious abuse of process, [Kauilani] is entitled to an award of actual damages in the amount of as much as $15,000,000 or more[.]
38. Furthermore, the filing of said Complaint and said [NOPA and amended NOPA] was instigated . . . [by Defendants] knowingly, intentionally, willfully, deliberately, and recklessly, in complete criminal disregard of [Kauilani's] legal rights and finances, such that [Kauilani] in addition to actual damages is also entitled to an award . . . of exemplary and punitive damages . . . of as much as $150,000,000 or more[.]
(Emphases added.)
On February 23, 2006, Defendants filed their answer, denying the allegations in Kauilani's complaint.
On May 18, 2006, Defendants filed their Motion for Summary Judgment on Kauilani's January 17, 2006 complaint, arguing that a NOPA "is, in effect, a republication of proceedings" that is "absolutely privileged" from a "suit for damages arising from the filing of a [NOPA]."
On July 28, 2006, the circuit court[6] entered an order granting summary judgment in favor of Defendants.[7] On August 14, 2006, the circuit court entered a judgment in favor of Defendants and against Kauilani.
On appeal, Kauilani advances the following points of error:
(1) "There is no absolute litigation privilege in the State of Hawaii barring either the abuse of process or slander of title actions against parties based upon their malicious filing of expunged notices of pendency of action in prior litigation";[8] and
(2) "Rule 28(4) Compliance: Kauilani objected below orally and in writing, yet the [circuit court] granted summary judgment, and denied reconsideration with leave to amend." (Footnotes omitted.)

DISCUSSION

A.
In summary judgment proceedings,
[t]he burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.
First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part [sic] is entitled to summary judgment as a matter of law.
French v. Hawaii Pizza Hut, Inc., 105 Hawai`i 462, 470, 99 P. 3d 1046, 1054 (2004) (quoting GECC Fin. Corp. v. Jaffarian, 79 Hawai`i 516, 521, 904 P.2d 530, 535, aff'd in part, 80 Hawai`i 118, 905 P.2d 624 (1995)).
"The evidentiary standard required of a moving party in meeting its burden on a summary judgment motion depends on whether the moving party will have the burden of proof on the issue at trial." GECC Fin. Corp., 79 Hawai`i at 521, 904 P.2d at 535 .
When the party defending the action moves for summary judgment, it "may, at any time, move with or without supporting affidavits for a summary judgment in his [or her] favor as to all or any part" of the action. Hawai`i Rules of Civil Procedure Rule 56 (b). Supporting affidavits are not required because the defending party does not have the burden of proof at trial and he or she can satisfy his or her burden on summary judgment "'by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his [or her] opponent. ` For ` [i]f no evidence could be mustered to sustain the non-moving party's position, a trial would be useless [.] `"
McLellan v. Atchison Ins. Agency, 81 Hawai`i 62, 66, 912 P. 2d 559, 563 (App. 1996) (quoting First Hawaiian Bank v. Weeks, 70 Haw. 392, 396-97, 772 P.2d 1187, 1190 (1989)).
On appeal,
[w]e review the circuit court's grant or denial of summary judgment de novo. Hawai`i Cmty. Fed. Credit Union v. Keka, 94 Hawai`i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:
Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (citations and internal quotation marks omitted).
Zane v. Liberty Mut. Fire Ins. Co., 115 Hawai`i 60, 72-73, 165 P.3d 961, 973-74 (2007) (quoting Querubin v. Thronas, 107 Hawai`i 48, 56, 109 P.3d 689, 697 (2005)) (brackets omitted).
In reviewing an award of summary judgment, we apply a three-step analysis. Mednick v. Davey, 87 Hawai`i 450, 457, 959 P.2d 439, 446 (App. 1998).
First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond.
Secondly, we determine whether the moving party's showing has established the material facts which justify a judgment in movant's favor. The motion must stand self-sufficient and cannot succeed because the opposition is weak.
Id. (citations, internal quotation marks, footnote, brackets, and ellipsis omitted). Where the moving party is a defendant, the third and final step is to determine (1) whether the plaintiff has demonstrated that if the case went to trial, there would be competent evidence to support a judgment for the plaintiff as to the plaintiff's claims, id.; and (2) if the defendant has adduced evidence of material facts which demonstrate the existence of affirmative defenses that would defeat the plaintiff's claims, whether plaintiff "has demonstrated conclusively the non-existence of such facts." Id.
We examine the circuit court's grant of summary judgment in Defendants' favor according to the foregoing analytical framework.

C.
In this case, Kauilani's complaint alleged a claim for "malicious abuse of process."
The supreme court has recognized that "process," for purposes of the tort of abuse of process, broadly encompasses "the entire range of procedures incident to litigation." Young v. Allstate Ins. Co., 119 Hawai`i 403, 412, 198 P.3d 666, 675 (2008) (internal quotation marks and brackets omitted). The Hawai`i Supreme Court has also stated that
[t]he elements of the tort of abuse of process are (1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding. Liability for abuse of process is imposed when the putative tortfeasor uses legal process primarily for an ulterior motive.
Chung v. McCabe Hamilton & Renny Co., 109 Hawai`i 520, 529, 128 P.3d 833, 842 (2006) (internal quotation marks and citations omitted).
Here, Kauilani alleged in its complaint that Defendants filed the NOPA and amended NOPA with "the sole and express collateral purpose of harassing [Kauilani] and bringing wrongful financial pressure . . . to extort monies[.]" On its face, therefore, the complaint alleged an "ulterior purpose," the first element of the tort of abuse of process.
However, there appears to be no evidence in the record to support the existence of the second element of the tort of abuse of processa wilful act in the use of the process which is not proper in the regular conduct of the proceeding. The exclusive basis for Kauilani's abuse-of-process claim was Defendants' act of filing the NOPA and amended NOPA. The Hawai`i Supreme Court has held that "in order to establish an abuse of process claim, the plaintiff must prove a `wilful act' distinct from the use of process per se." Young, 119 Hawai`i at 416, 198 P.3d at 679. In Young, the supreme court quoted from Professor Prosser's treatise on torts to explain that to establish the wilful-act element of the abuse-of-process tort,

"some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."

119 Hawai`i at 414, 198 P.3d at 678 (brackets omitted). Since evidence that Defendants filed the NOPA and amended NOPA, without more, did not support the wilful-act requirement of an abuse of process claim, the circuit court did not err in granting summary judgment in favor of Defendants.

D.
We conclude that the circuit court did not abuse its discretion when it entered its order denying Kauilani's motion for reconsideration and leave to amend. See Fed. Home Loan Mortgage Corp. v. Transamerica Ins. Co., 89 Hawai`i 157, 162, 969 P. 2d 1275, 1280 (1998) (noting that federal courts construing Federal Rules of Civil Procedure Rule 15 (a), which is functionally identical to Hawai`i Rules of Civil Procedure Rule 15 (a) relating to amended and supplemental pleadings, "have observed that a motion for leave to amend is not a vehicle to circumvent summary judgment" and adding a cause of action while a dispositive motion is pending before the court "would delay without sufficient justification the final resolution of this case") (citations, brackets, and internal quotation marks omitted); Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai`i 97, 110, 58 P. 3d 608, 621 (2002) (holding that "[r]econsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding").

CONCLUSION
For the foregoing reasons, we affirm the July 28, 2006 order granting summary judgment, the August 14, 2006 judgment, and the September 20, 2006 order denying reconsideration and leave to amend.
Our disposition of this appeal renders it unnecessary to address whether the filing of a NOPA is absolutely privileged.
NOTES
[1] The Honorable Sabrina S. McKenna presided.
[2] The current version of HRS § 634-51 has not changed since ELC recorded the NOPA.
[3] The Honorable Gary W. B. Chang presided (Civ. No. 05-1-1608-09).
[4] Summary judgment was granted as to Defendants' claims for misrepresentation, unjust enrichment, breach of covenant of good faith and fair dealing, constructive trust, rescission, injunctive/declaratory relief, and conversion. Summary judgment was denied as to Defendants' claims for breach of contract; and fraud, fraudulent concealment, and deceit.
[5] The complaint against the attorney was subsequently dismissed by Kauilani.
[6] The Honorable Sabrina S. McKenna presided (Civ. No. 06-1-0069-01).
[7] At the hearing on Defendants' motion for summary judgment, the circuit court orally ruled: "The court believes that the Hawaii Supreme Court would follow the California law and find that there is an absolute privilege barring a claim for abuse of process for filing a [NOPA] so therefore . . . the court grants [Defendants'] motion."
[8] This court's review is limited to any alleged error with respect to "abuse of process." Kauilani's January 17, 2006 complaint solely alleged, and was entitled, "Complaint for Malicious Abuse of Process." Kauilani sought to amend this complaint and assert a cause of action for "slander of title" after the circuit court granted Defendants' May 18, 2006 motion for summary judgment and entered final judgment.