## CARL C. ADAIR *v.* KONA CORPORATION, A HAWAII CORPORATION, AND EDWARD C. HUSTACE, TRUSTEE OF THE STILLMAN TRUST.

No. 4603.

MARCH 19, 1969.

RICHARDSON, C.J., MARUMOTO, ABE, JJ., CIRCUIT JUDGE LUM IN PLACE OF LEVINSON, J., DISQUALIFIED, AND CIRCUIT JUDGE MASATO DOI ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by Edward C. Hustace, trustee of Stillman Trust, from a judgment entered on May 27, 1966, by the circuit court of the first circuit in favor of Carl C. Adair in an action brought by Adair, as plaintiff, against Hustace and Kona Corporation, as defendants. The judgment was entered pursuant to an order granting Adair's motion for summary judgment and denying a like motion filed by Hustace.

In his action, Adair sought a conveyance of 200 acres of fee simple land in Kaloko, North Kona, Hawaii, by Kona Corporation to him, in accordance with their agreement calling for such conveyance. Inasmuch as this land was part of a larger parcel covered by a mortgage from Kona Corporation to Hustace, Adair also sought its release from the lien of the mortgage.

Adair filed his complaint on March 18, 1963, being the day on which Kona Corporation was legally required to pay the first installment of principal and interest on its promissory note secured by the mortgage. The note provided for the payment of such installment of principal and interest on March 17, 1963, but that day being Sunday, the due date was automatically extended to the following day under R.L.H. 1955, § 197-85.

Kona Corporation suffered the mortgage to fall into default by failing to make the required payment on the due date. So, while the action was pending in the circuit court, Hustace proceeded to foreclose the mortgage by entry and possession as provided in R.L.H. 1955, §§ 336-10 through 336-12. He made the entry on October 2, 1963,

and filed the prescribed certificate of entry on October 8, 1963. The foreclosure was completed by the filing of affidavit of foreclosure on March 11, 1965.

In the judgment, the circuit court ordered Hustace to convey to Adair the land sought by him, subject to reservation of easements for the operation and maintenance of existing water tanks and water pipelines, and excepting therefrom land required for access to the remaining lands included in the foreclosure.

The pleadings, admissions, and affidavits on file in this case contain the following material and undisputed facts:

(1) On July 9, 1962, Hustace sold to Kona Corporation 49 parcels of fee simple lands in North Kona, containing an aggregate area of 15,740 acres, plus other items of real and personal property, for a total price of $6,000,000.

(2) Kona Corporation paid the price in the following manner: $500,000 in cash, and $5,500,000 by execution of a promissory note secured by purchase money mortgage.

(3) The sale followed a prior agreement of Hustace to sell the same property for the same price to Adair, subject to court approval, and court authorization to Adair to substitute a corporation to be formed by him and others as purchaser in his stead.

(4) The promissory note provided for payment of $5,500,000 in 14 equal annual installments of $367,000 each, beginning March 17, 1963, and a final installment of $362,000 on March 17, 1976,[1] and carried interest on declining principal balances at the rate of 3 per cent per year for the first 10 years and 5 per cent per year thereafter, payable annually with each installment of principal.

(5) The mortgage contained a provision for fore-

---

[1] This appears to be an inadvertent error and the date should have been March 17, 1977. However, the error is immaterial to the decision in this case.

closure by any of the methods provided by law in case of mortgagor's default; and a covenant on the part of the mortgagee, set forth in paragraph (A) of the mortgagee's covenants, that he would "release up to 300 acres of the land of Kaloko mauka of the Hawaii Belt Road, within tax keys 7-3-01-1 and 7-3-08-33, 37 and 38," upon mortgagor's request, without payment of any consideration other than the down payment of $500,000, but subject to the conditions stated in paragraphs (J) and (K).

(6) Paragraph (J) provided that all releases be in blocks containing not less than 100 contiguous acres and be according to a plan or plans previously approved by the mortgagee to the end and purpose that the location and configuration of any released land would not make a patchwork or otherwise detrimentally affect the utility or value of the unreleased lands.

(7) Paragraph (K) provided that there be retained over any released land, as subject to the lien of the mortgage, easements for water tanks and water pipelines, and a roadway easement, determined by the mortgagee to be adequate and along reasonably traversable grades or contours, to provide access to the lands not yet released.

(8) The mortgage also contained a provision, set forth in paragraph (L) of the mortgagee's covenants, which required, as a condition precedent to any release, that the mortgagor not be in default under it or the promissory note secured thereby.

(9) On July 17, 1962, Kona Corporation executed an agreement with Adair in which, among other matters, it agreed to convey to Adair 200 acres of land "in the area known as UPPER KALOKO, being the land situate mauka of the Hawaii County Belt Road, and below the 2800 foot elevation," subject to easements for water and utilities and a roadway easement 100 feet in width for access to its remaining lands from the belt road.

(10) On March 14, 1963, counsel for Kona Corporation presented to Hustace's counsel a request for release of 264.639 acres of the land within tax key 7-3-01-1, together with a draft of release which described the parcel to be released by metes and bounds, and reserved easements for water tanks and water pipelines in their existing location and "at such other location to which said water pipeline and tanks may be moved and relocated," and a roadway easement 100 feet wide over the entire parcel, with the following explanation regarding the reservation of roadway easement: "I have specifically provided, as a reservation subject to the lien of the mortgage, an easement for roadway and utilities 100 feet in width across the entire 264 acres. At such time as a roadway is constructed across this property, the blanket easement could then be restricted to this roadway, but until such time as the road is constructed, there is a blanket easement over all of the property, which should be ample protection to the mortgagee."[2]

(11) On the same day, counsel for Hustace responded to the request, voicing some concern over the quoted language in the draft of release which made the reservation of easements for water tanks and water pipelines applicable to such facilities not only at their existing location but also as they might be relocated in the future, and objecting to the reservation of roadway easement in the draft on the ground that such blanket reservation was of doubtful validity and on the further ground that it did not reserve to the mortgagee the right to insist on a delineation of such easement along reasonably traversable grades or contours.

---

[2] Kona Corporation presented its first request for release to Hustace on March 7, 1963. This request may be ignored, for it was superseded by the request of March 14, 1963. The parcel covered in the March 14, 1963, request will hereafter be referred to as the 264-acre parcel, and the draft of release presented with the request will be referred to as the original draft of release.

(12) On March 18, 1963, Mrs. Blanche Hill, president of Kona Corporation, presented to Hustace a revised draft of release, which made the easements for water tanks and water pipelines applicable only to existing facilities, and described the roadway easement as running "from the southeasterly side of the old Government Road above mentioned to Course 3 above described along reasonably traversable grade or contours satisfactory to the Mortgagee," the government road and the course referred to being the road and course identified in the survey description of the 264-acre parcel.

(13) At the time Mrs. Hill presented the revised draft of release, she told Hustace that Kona Corporation would not pay the installment of principal and interest on the promissory note which was due on that day.

(14) The 200 acres Adair sought to have conveyed to him was part of the 264-acre parcel which Kona Corporation requested Hustace to release.

(15) Neither Kona Corporation, nor anyone on its behalf ever paid to Hustace any of the amounts specified in the promissory note, and Hustace did not comply with Kona Corporation's request for release of the 264-acre parcel.

On this appeal, Hustace specifies four errors as having been committed by the circuit court. They are: first, that the court erred in directing him to accept performance of conditions precedent to release, after default on the part of Kona Corporation and foreclosure of the mortgage; second, that the court erred in directing him to convey to Adair land claimed by him under a mortgagor whose rights had been foreclosed; third, that the court erred in granting Adair's motion for summary judgment; and, fourth, the court erred in denying his motion for summary judgment.

Of these specifications of error, the third and the

fourth require no discussion because their disposition depends on our decision on the first two. We see no merit in either the first, or in the second, specification of error.

At the outset, in considering this appeal, we may state that we have a serious doubt regarding the validity of the foreclosure referred to in this case. That foreclosure was by entry and possession under R.L.H. 1955, §§ 336-10 through 336-12, which is strict foreclosure. Strict foreclosure is a concomitant of the title theory of mortgages, and makes absolute the title which the mortgagee already has by destroying the mortgagor's equity of redemption. It does not work under the lien theory of mortgages. Osborne, *Handbook on the Law of Mortgages* 908 (1951); 4 *American Law of Property* 434 (1952). Osborne states the reason for this as follows:

> "Strict foreclosure is thought of as not creating any new rights in the mortgagee, but as merely destroying all interest of the mortgagor in the property, leaving the mortgagee's title to it free and clear. A requirement, therefore, is that the mortgagee must have legal title. Where he has only a legal lien with legal title in the mortgagor, it obviously will not work."

See, also, Gavit, *Under the Lien Theory of Mortgages, Is the Mortgage Only A Power of Sale?*, 15 Minn. L. Rev. 147 (1931), where the author advances the theory that "in the so-called lien theory states the *conventional* mortgage is either a common law or statutory power of sale; no more, and no less."

Hawaii has espoused the lien theory of mortgages since 1939, when the legislature enacted S.L.H. 1939, c. 255, compiled in R.L.H. 1955, § 196-1, pertinent part of which reads as follows:

> "Every transfer of an interest in property, real or personal, made as security for the performance of another act or subject to defeasance upon the payment

of an obligation, whether such transfer is made in trust or otherwise, is to be deemed a mortgage and shall create a lien only as security for the obligation and shall not be deemed to pass title."

The only case to come before this court involving foreclosure by entry and possession, after the enactment of S.L.H. 1939, c. 255, was *Decano* v. *Hutchinson Sugar Co.,* 45 Haw. 505, 371 P.2d 217 (1962). In that case, the validity of foreclosure was assumed, and not put in issue. Here, too, it is not in issue. Kona Corporation did not raise the question in the circuit court, and is not a party to this appeal. Adair, also, did not raise the question in the circuit court, and has not raised it here.

So, for the purpose of deciding this appeal, we will assume that the foreclosure was valid. But in assuming the foreclosure to be valid, we do not preclude ourselves from inquiring into its scope.

Hustace stated his basic contention on this appeal in the second specification of error. Restated more in detail, it is that Kona Corporation's mortgage to Hustace was prior in time, and senior in interest, to the corporation's agreement with Adair, under which Adair claimed his right to conveyance; that the foreclosure wiped out all of Kona Corporation's interest in the mortgaged property, and all claims and interests therein of third parties which were junior to the mortgage; that, consequently, Adair's right did not survive the foreclosure, and the circuit court erred in directing the conveyance to him.

The contention overstates Hustace's case, for it ignores the mortgagor's right to release under paragraph (A) of the mortgagee's covenants. That Hustace considers paragraph (A) to be relevant to the decision of this appeal is evident from the second specification of error. Implicit in that specification is the recognition that if Kona Corporation had done everything it was required to do to entitle

it to release under paragraph (A), before default and foreclosure, the foreclosure would have been subject to its right to release, and, through Kona Corporation, Adair would have been entitled to the conveyance he sought in this action.

Hustace's contention in connection with the first specification of error is that Kona Corporation did not perfect its right to release under paragraph (A) before default. We hold otherwise. We think that Kona Corporation had sufficiently complied with the requirements for release under paragraph (A) before committing any default.

The default mentioned in the specification was Kona Corporation's failure to pay the promissory note secured by the mortgage according to its terms. That was the only default on the part of the mortgagor shown in the record. It occurred on March 19, 1963, upon the failure of Kona Corporation to pay the first installment of principal and interest on the promissory note, which fell due on the previous day and as to which the corporation had until midnight of the due date to make the payment.

Under paragraph (A), release was to be of a parcel or parcels, not exceeding 300 acres, within tax keys 7-3-01-1 and 7-3-08-33, 37 and 38, upon request and without payment of any consideration therefor, provided the request complied with paragraphs (J) and (K).

Paragraphs (J) and (K) set forth conditions, as distinguished from covenants. A condition is a limitation, and does not create an obligation, nonperformance of which would constitute default. In *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481, 482 (1951), it is stated: "A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor." *Bluewaters, Inc.* v. *Boag*, 320 F.2d 833, 835 (1st Cir. 1963), defines a condition as "a limitation of some otherwise broader provision as distinguished

from an independent obligation assumed by the promisor."

Paragraph (J) limited the location, size and shape of the land to be released. Paragraph (K) placed limitations on title, or the quantum of the estate to be released, by making the released land subject to reservations of easements, instead of being free and clear of all encumbrances.

Kona Corporation's request of March 14, 1963, for the release of the 264-acre parcel, of which the parcel claimed by Adair was a part, came within the purview of paragraph (A) because the land sought to be released was less than 300 acres and was within tax key 7-3-01-1.

In connection with the request, Kona Corporation presented two drafts of release to Hustace, the original draft on March 14, 1963, and a revised draft on March 18, 1963. Both the original draft and the revised draft complied with paragraph (J). This was not disputed by Hustace. The revised draft complied with the condition of paragraph (K) relating to reservation of easements for water tanks and water pipelines, which, by omitting the words "or at such other location to which said water pipeline and tanks may be moved and relocated," from the language of the reservation, allayed the concern Hustace voiced to the reservation in the original draft.

With regard to the condition of paragraph (K) relating to roadway easement, we think that the reservation in the original draft complied sufficiently therewith, except for failure to reserve to the mortgagee the right to insist on a delineation of the easement along reasonably traversable grades or contours. The deficiency was met in the revised draft. The revised draft also took care of Hustace's objection to the blanket reservation in the original draft by confining the location of the reserved easement to a strip 100 feet in width running from the southeasterly side of the old government road to course 3 of the survey description of the 264-acre parcel.

From the record, there appear to be two reasons for Hustace's failure to comply with Kona Corporation's request for release, even after the corporation met the objections to the original draft in the revised draft. One reason was the failure of the revised draft to locate the roadway easement by metes and bounds. The other was the statement made by the president of Kona Corporation, at the time she presented the revised draft to Hustace, that the corporation would not pay the installment of principal and interest on the promissory note due on that day.

There was nothing in the mortgage which required Kona Corporation to provide a metes and bounds description of the roadway easement. The condition of paragraph (K) was that "access determined by the Mortgagee to be adequate, and along reasonably traversible grades or contours to the remaining unreleased land shall be retained under the lien of this Mortgage." Under this language, the reservation could be a floating one at the time of release, to be later fixed along a specific course at the time of construction of the roadway. *City of Los Angeles* v. *Howard,* 244 Cal. App. 2d 538, 53 Cal. Rptr. 274 (1966); *Salt Lake City* v. *J. B. & R. E. Walker,* 123 Utah 1, 253 P.2d 365 (1953). This was the concept underlying the reservation in the original draft, as stated in the explanation of the counsel for Kona Corporation to Hustace's counsel. The absence of metes and bounds description would not have posed any insurmountable problem in case of disagreement between the mortgagor and the mortgagee, for the law is that where an easement is not definitely located in a grant or a reservation, and the dominant and servient owners fail to agree, a court may locate it in the exercise of its equity powers. *Looney* v. *Blackwood,* 224 Ala. 342, 140 So. 400 (1932); *Ballard* v. *Titus,* 157 Cal. 673, 110 P. 118 (1910).

The statement made by the president of Kona Corporation at the time she presented the revised draft to Hustace had no bearing on the corporation's right to release, which was not conditioned on prepayment of any portion of the promissory note. The fact remains that the revised draft was presented to Hustace before default. In our opinion, that draft was in full compliance with the requirements for release, and its presentation before default made paragraph (L), requiring that there be no default as a condition precedent to release, inapplicable.

In case foreclosure is by court proceedings, a disputed question, such as was present in this case, is determined in such proceedings. *Commercial Bank of Iron Mountain v. Hiller,* 106 Mich. 118, 63 N.W. 1012 (1895); *Deering Harvester Co. v. C. L. Smith Farm Land Development Co.,* 146 La. 301, 83 So. 580 (1920).

*Commercial Bank of Iron Mountain v. Hiller* involved a mortgage provision in which the original mortgagees agreed with John M. Hiller, the original mortgagor, that they would "release from the lien and operation of this mortgage and the indebtedness hereby secured, without payment, charge, or compensation, one-fifth of all the lots * * * hereby conveyed, as fast as they are sold or contracted to be sold, at such time or times as said John M. Hiller, or his assignee or grantee, may request such lots to be so released." After defaulting in the payment of the mortgage debt, the mortgagor requested the assignee of the mortgage to release the lots which had been sold or contracted to be sold. The assignee refused the request, and filed a bill to foreclose. The chancery court decreed foreclosure, subject to release of the lots requested to be released. On appeal, the supreme court affirmed that decree.

In *Deering Harvester Co. v. C. L. Smith Farm Land Development Co.,* there was a mortgage on 42,512 acres of

marsh lands to secure the payment of $160,000. The mortgage provided for release in tracts of not less than 2,500 acres in a compact body at the rate of one acre for every $5 paid on the mortgage debt. The mortgagor had paid $75,000 before it defaulted, but had not demanded any release at the times it made the payments. Upon default, the assignee of the mortgagee filed a suit to enforce the mortgage. In the proceeding, the mortgagor claimed release of 15,000 acres. The trial court denied the mortgagor's claim. However, the supreme court reversed, and, in so doing, it stated:

"Contrary to the view expressed by the lower court * * * we think that, when the deed recites that 'the vendor or legal holder or holders * * * will release in tracts of not less than 2,500 acres in a compact body to the purchaser hereof or to its assigns,' it means what it says, and defendant had the right to have the property in the proportions stipulated released to itself. We also think that, when defendant performed sufficient of the terms of the agreement to entitle it to a release, the right became a vested one which could not be, and was not, forfeited, either by the failure to make the demand or by the failure to pay the notes subsequently maturing."

The facts in the two cases discussed above were more favorable to the mortgagees than the facts in this case, for there the requests for release were made after default, whereas here the requests were made, and conditions to release were met, before there was any default on the part of the mortgagor. Nevertheless, the decisions were against the mortgagees.

A mortgagor's right to release may be asserted by his privy where the mortgage provides that the benefits accruing to the mortgagor thereunder inure to the benefit of his assigns. *Taylor* v. *Carter*, 211 Mich. 365, 178 N.W.

712 (1920). The mortgage in this case specifically so provided. Thus, Adair, as a privy to Kona Corporation, was entitled to assert the corporation's right to release with respect to the parcel he claimed. However, he had no opportunity to do so in connection with the foreclosure here because that foreclosure was by entry and possession. So, he asserted the right in the trial of this case, and what the circuit court did was, in effect, what it would have done in foreclosure proceedings had Hustace proceeded to foreclose by court action.

In this connection, *Nims* v. *Vaughn,* 40 Mich. 356 (1879), is cogent. There, the mortgagor mortgaged six acres of land platted into city lots, and the mortgagee agreed, in a separate agreement made as a part of the same transaction, that he would release three lots "without additional security." The mortgagor defaulted on the mortgage, and the mortgagee proceeded to foreclose the mortgagor's equity of redemption. Thereafter, the mortgagor requested release of the three lots. The mortgagee refused. The mortgagor then conveyed the three lots to his son. After the completion of foreclosure, the mortgagor and his son sued the mortgagee to compel him to perform his agreement to release. The court ordered such performance. The case is an early one, but the opinion was written by Cooley, J., a revered name in American legal history.

Affirmed.

*Clinton R. Ashford & J. M. Rolls, Jr.* (*Ashford & Wriston* of counsel) for appellant.

*Frank D. Gibson, Jr.* (*Anthony B. Craven* with him on the brief, *Henshaw, Conroy & Hamilton* of counsel) for appellee.