David T. DIAS and Merribelle
Dias, Appellants,

v.

STATE of Alaska, DEPARTMENT OF
TRANSPORTATION AND PUBLIC
FACILITIES, Appellee.

No. S–13570.

Supreme Court of Alaska.

Sept. 17, 2010.

Ronald L. Baird, Office of Ronald L. Baird, Anchorage, for Appellants.

Jeffrey P. Stark, Assistant Attorney General, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Appellee.

Before: FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

The Diases obtained land that was adjacent to a public road and subject to an easement and right of way held by the State. The State contacted them to begin using the easement and right of way for road construction. The Diases filed suit in the superior court to quiet title, asserting that the State had only a temporary easement for the removal of gravel and other materials and that the temporary easement had expired. The superior court granted the State's motion for summary judgment, finding that the instrument conveyed to the State the right to construct and maintain a road and perform related activities. The Diases appeal. We agree with the superior court and affirm the grant of summary judgment.

## II. FACTS AND PROCEEDINGS

In 1969 Frank Cornelius conveyed an easement and right of way on land he owned in Palmer to the State of Alaska, Department of Highways.[1] The conveyance was recorded

on a standard form entitled "GRANT OF RIGHT OF WAY EASEMENT." The standard language on the form provided that the grantor conveyed "a perpetual, full and unrestricted easement and right of way."

A typewritten passage on the form described the conveyance as "[a] strip of land 150 feet wide, adjacent to the northwesterly side of Trunk Road (Route 565) ... [for] a distance of 2000 feet." A consideration of "no/100 dollars" was typed into a corresponding blank on the form. The typewritten description provided that "the State will pay ten cents per cubic yard for gravel or other material removed from above described area." The form provided space to describe the purpose of the conveyance, which was left blank. "Trunk Road FAS 565" was typed into a space provided for "PROJECT NO."

In 1992 Cornelius conveyed a portion of the land that was subject to the easement and right of way to David and Merribelle Dias.

In 2007 the State contacted the Diases to negotiate its use of the easement and right of way and the acquisition of additional right of way for the Trunk Road Reconstruction Project. The Diases asserted that the State did not have an existing right of way and refused to convey any additional right of way.

The Diases filed a Complaint for Quieting Title with the superior court, asking the court to quiet their interest in the property free of any interest of the State. The State filed a counterclaim, asking the court to declare that it had "a valid easement for highway right-of-way purposes."

The Diases moved for summary judgment, arguing that the easement and right of way was solely for the removal of gravel and other materials, not construction of a public road, and that it had expired. The State filed a cross-motion for summary judgment, arguing that the instrument granted it a perpetual right to use the easement and right of way for highway construction and maintenance.

---

1. The Department of Highways became part of the Department of Transportation and Public Facilities in 1977.

The superior court granted the State's summary judgment motion, concluding that the 1969 instrument granted "the State a valid and enforceable easement and right-of-way over the [Diases'] property for the purpose of constructing and maintaining a roadway, and for other related purposes."

The Diases appeal.

## III. DISCUSSION

### A. Standard Of Review

■ We review a superior court's grant of summary judgment de novo.[2] In our review, we determine "whether any genuine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law."[3] Whether a deed is ambiguous is a question of law subject to de novo review.[4]

### B. Three–Step Analysis

■ When interpreting deeds, we attempt to give effect to the intentions of the parties using a three-step analysis.[5] The first step "is to look to the four corners of the document to see if it unambiguously presents the parties' intent."[6] The analysis ends here if the deed, taken as a whole, is only open to one reasonable interpretation.[7]

■ If we determine that the deed is ambiguous, the next step in determining the parties' intent is "a consideration of the facts and circumstances surrounding the conveyance."[8] If the parties' intent is still not discernable after examining extrinsic evidence, then we resort to rules of construction.[9]

### C. The Deed Unambiguously Grants The State A Perpetual Right To Construct A Road.

The Diases argue that the instrument's language unambiguously supports the use of the conveyance only for temporary material extraction. The State argues that the instrument unambiguously grants it a perpetual highway right of way. The language of the instrument supports the State's contention.

■ The instrument grants the State the right to construct and maintain a highway and to perform related activities, such as removing gravel. The instrument is entitled "GRANT OF RIGHT OF WAY EASEMENT" and it conveys an "easement and right of way." We have stated that "[a] 'right-of-way' is generally considered to be a class of easement."[10] We have described a right of way as "primarily a privilege to pass over another's land,"[11] and we have consistently used the phrase "right of way" to refer to strips of land used for passage of people or things.[12] Black's Law Dictionary also de-

2. *Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995) (citing *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 (Alaska 1994)).

3. *Id.* at 1051–52 (citing *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992)).

4. *Estate of Smith v. Spinelli*, 216 P.3d 524, 529 (Alaska 2009).

5. *Id.* (internal citations omitted).

6. *Id.* (quoting *Norken Corp. v. McGahan*, 823 P.2d 622, 626 (Alaska 1991)).

7. *Id.* (internal citations omitted).

8. *Id.* (quoting *Norken*, 823 P.2d at 626).

9. *Id.* (internal citations omitted).

10. *Wessells v. State Dep't of Highways*, 562 P.2d 1042, 1046 n. 5 (Alaska 1977) (internal citation omitted). *See also Andersen v. Edwards*, 625 P.2d 282, 284 n. 1 (Alaska 1981).

11. *Gerstein v. Axtell*, 960 P.2d 599, 600 n. 2 (Alaska 1998) (internal quotations omitted).

12. *See, e.g., N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 632 (Alaska 2000) (right of way for electric transmission line); *Gerstein*, 960 P.2d at 600 (right of way for electric distribution lines); *Wessells*, 562 P.2d at 1049, 1051 (implying that rights of way are for road construction by stating that one could not "reasonably expect a right-of-way" to be triangular in shape and that a "right-of-way may follow such route as is reasonably necessary for the [owner's] purposes").

In contrast, we referred to a right to use a material site as a "material site right-of-way" in *Foster v. State, Department of Transportation*, 34 P.3d 1288, 1289 (Alaska 2001). However, we made other references to simply a "right-of-way" that was used for highway construction. *Id.* at 1289. This difference in terms suggests that "right of way," with no descriptive modifier, refers to the privilege to pass over land.

fines "right of way" as a right of passage.[13] Given the definition of right of way and our past interpretation of the term, the instrument unambiguously gives the State the right to use the land for passage.

The instrument provides the State with an easement and right of way "along, over and across" land. This phrase is consistent with a purpose of highway construction; it is inconsistent with a purpose limited to only the removal of gravel and other materials, which involves removing the materials from below the surface of the land. The conveyance is a narrow strip of land 150 feet wide and 2000 feet long running alongside an existing road, a configuration that would reasonably be used for a road.

■ The instrument lists "no/100 dollars" as consideration for the easement and right of way, but provides that the State will pay ten cents per cubic yard of gravel or other material removed from the conveyed area. The Diases argue that the specification of consideration only for the removal of gravel or other material signifies that the instrument conveyed only the right to remove those materials. The lack of stated consideration for the easement and right of way, however, does not change the plain meaning of the instrument. Cornelius may have had a number of reasons to limit his cash payments to compensation for materials removed. For instance, he may have decided that an improved road would increase the value of his property. Whatever his motivation, the limited cash compensation does not

affect the scope or purpose of the right of way.

The instrument also grants the State a perpetual right. The instrument unambiguously states that the right conveyed to the State is perpetual, defeating the Diases' argument that only a temporary right was granted. The grant of a "perpetual" easement and right of way is also consistent with a grant to construct and maintain a highway, which is a permanent right, and inconsistent with a grant to only remove materials, which is generally a temporary right.

■ Taken as a whole, an analysis of the four corners of the instrument unambiguously reveals the intent of the original parties— the instrument grants the State a "perpetual, full and unrestricted easement and right of way" that can be used for highway construction and maintenance. The description of the easement and right of way supports this interpretation, and the financial arrangements do not change it.[14]

## IV. CONCLUSION

We AFFIRM the superior court's grant of summary judgment.

CARPENETI, Chief Justice, not participating.

---

**13.** Black's Law Dictionary 1440 (9th ed.2009) provides the following applicable definitions for right of way: "1. The right to pass through property owned by another.... 2. The right to build and operate a railway line or a highway on land belonging to another, or the land so used.... 4. The strip of land subject to a nonowner's right to pass through."

**14.** Even if we found the deed to be ambiguous, the extrinsic evidence compels the same result. The records for the Trunk Road project contain forms entitled "Permit to Take Borrow for Highway Purposes," which the State uniformly used when it sought easements for gravel removal.

These instruments describe rectangular and triangular easements, consistent with sites for removal of gravel but not consistent with the construction of a road. The record contains three other Grant of Right of Way Easement instruments used for the Trunk Road project that describe strips of land, consistent with construction of a road. And two of these instruments explicitly provide that the easement and right of way was for road construction. These other instruments provide extrinsic evidence that the State intended to obtain rights to construct and maintain a road when it used the Grant of Right of Way Easement instrument with Cornelius to obtain rights to a strip of land.