OFFSHORE SYSTEMS–KENAI,
an Alaskan Partnership,
Appellant,

v.

STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, and Kenai Peninsula Borough, a Municipal Corporation, Appellees.

No. S–13994.

Supreme Court of Alaska.

July 27, 2012.

---

Ronald L. Baird, Office of Ronald L. Baird, Anchorage, for Appellant.

Dario Borghesan, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellee Department of Transportation.

Scott Bloom, Assistant Borough Attorney, Soldotna, for Appellee Kenai Peninsula Borough.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Offshore Systems–Kenai (Offshore) operates a commercial dock facility on Cook Inlet in the Kenai Peninsula Borough (Borough). Nikishka Beach Road traverses Offshore's property. The public has used this road to access the beach since the 1950s. In 2007 Offshore installed a gate blocking the road. The State and the Borough sought an injunction against Offshore, alleging a public right-of-way or prescriptive easement exists over Nikishka Beach Road.[1] Offshore counterclaimed for a declaratory judgment quieting title to its property. The parties disputed the length and history of Nikishka Beach Road.

The superior court concluded that Nikishka Beach Road provided public access to the beach on several alternative grounds, ruling: (1) Nikishka Beach Road was a public highway under the 1959 federal deed conveying the road to the State and the road extended all the way to the beach, although the location of the road had shifted over time; (2) the 1980 patent conveying the surrounding property from the State to the Borough reserved a separate public access easement to and along the beach, and that easement was located over Nikishka Beach Road; and (3) the public had established a prescriptive easement over the road for access to the beach. Offshore appeals.

Because we affirm the superior court's ruling that the 1980 patent reserved a valid easement for public access to the shoreline of Cook Inlet, and hold the superior court had the authority to locate that easement over Nikishka Beach Road, we do not address the court's alternative rulings. We reverse and remand the award of attorney's fees to the Borough.

## II. FACTS AND PROCEEDINGS

### A. Facts

Offshore owns three parcels of property in Section 36, Township 8 North, Range 12 West of the Seward Meridian (Section 36). Lots 1 and 3 are adjacent to the shoreline of Cook Inlet along their northern boundaries. Lot 2 is directly south of Lot 1 and does not contain any shoreline.

Nikishka Beach Road branches off from the Kenai Spur Highway and ends on Offshore's property. At a bluff above the shoreline, the road splits into a "Y" intersection. One branch proceeds to the right or north, providing access to the north beach, and the other branch proceeds to the left or south, providing access to Offshore's dock and the south beach.[2] The parties and superior court refer to the north branch as the "beach access road" and the south branch as the "dock access road."

A homesteader named Mack McGahan first plowed Nikishka Beach Road through Section 36 in the early 1950s. This road was the predecessor to the current beach access road. McGahan's son and nephews testified that local residents have used the road to access the beach for commercial fishing and recreational purposes since it was first constructed.

The federal government soon accepted responsibility for Nikishka Beach Road. A 1954 report from the federal Alaska Road Commission stated: "Set ditch and slope stakes Nikishka No. 2 Beach Road." A 1957 map from the U.S. Bureau of Public Roads shows Nikishka Beach Road extending from the Kenai Spur Highway (formerly known as Route 490) to the shoreline. In 1959 the federal government conveyed its interest in all public highways, including Nikishka Beach Road, to the State by quitclaim deed. The deed described Nikishka Beach Road as reaching "[f]rom a point on FAS Route 490 approx. 15.5 miles north of the Village of

---

1. The parties and the superior court used the terms "easement" and "right-of-way" interchangeably.

2. Although these roads actually travel east and west, the parties and witnesses in this case refer

to them as the north and south roads because, when viewed more broadly, those are the directions these roads take with reference to Cook Inlet.

Kenai, north to Nikishka Beach. Length 0.8 mile[s]."

The federal government conveyed Section 36 to the State after its admission to the Union in 1959. In the 1960s the State entered into a series of leases for Lots 1, 2, and 3 in Section 36 with James Arness, a local resident, and these leases acknowledged Nikishka Beach Road as a public road providing access to the beach. In 1960 Arness submitted his first lease application, which noted that improvements on the land included a "road, installed by bureau of public roads ... to beach." A 1961 appraisal report determining the rental value of Lot 1 stated it was "traversed by the Nikishka #2 State road, which leads through [the property] and offers a road approach to the beach." The report also included a drawing showing Nikishka Beach Road extending from the bluff to the shoreline in a northeasterly direction. In 1962 Arness entered into a five-year lease for Lot 1 that provided "the Lessee shall not prevent the public from using the Nikishka Beach Road."

By 1963 Arness had constructed a dock on Lot 1 and an access road connecting the dock to Nikishka Beach Road. The public began using the dock access road to travel from the bluff down to the beach shortly after that road was constructed.

In 1966, as part of a project to widen and pave Nikishka Beach Road, the State issued highway right-of-way permit ADL 32264. This right-of-way stopped short of the "Y" intersection and bluff. Shortly after issuing this permit, the State entered into 55–year leases with Arness for Lots 1 and 2. The lease for Lot 2 was subject to highway permit ADL 32264, and both leases were subject to "a 60 foot wide right-of-way for existing roads to the beach." [3]

In 1980 the State conveyed Section 36 to the Borough by patent. The patent stated that the property was subject to a 50–foot wide public easement for access to and along the shoreline of Cook Inlet, and provided:

Said public access easement shall be identified by the [Borough] and shall be subject to the covenant that no development or conveyance shall occur on the land conveyed by this patent until the [Borough] has platted such easements and formally notified the [State] of the location of such public access easements.

The Borough never located or platted this easement.

The Arness leases were ultimately assigned to Offshore in 1985. By that time the original beach access road had become overgrown, and the dock access road had fallen into disrepair. Offshore improved the dock facilities and reconstructed the dock access road with a gravel surface and a gentler grade. Offshore also reconstructed the beach access road in order to obtain gravel from the north beach. The public began using the beach access road to access the north beach at that time.

In 1990 the Borough sold Lots 1, 2, and 3 to Offshore by quitclaim deed. The deed did not specifically mention Nikishka Beach Road or a public access easement, but contained a general reservation clause stating the conveyance was subject to "[r]ights and reservations of record and any easements ... of record or ascertainable by physical inspection." The public has used both the beach access road and the dock access road to access the beach since Offshore purchased the property.

Offshore did not object to the public's use of these roads until 2007 when, in response to security requirements imposed by the Coast Guard, it installed a gate and guard shack across Nikishka Beach Road shortly before the bluff and "Y" intersection. The State notified Offshore that it was illegally obstructing a public right-of-way. Offshore refused to remove the gate.

**B. Proceedings**

In 2008 the State filed a complaint against Offshore providing three alternative arguments: (1) Nikishka Beach Road had existed

---

**3.** The State also entered into a 55–year lease with Arness for Lot 3, but this lease did not mention any easements or roadways.

as a public road since before statehood; (2) the 1980 patent conveying Section 36 from the State to the Borough had reserved a 50–foot public access easement to the shoreline, which also provided a public right-of-way over Offshore's property; and alternatively, (3) the public had established a prescriptive easement over Nikishka Beach Road to the beach. The State requested an injunction preventing Offshore from interfering with this public right-of-way. The Borough filed a motion to intervene, which Offshore opposed. The superior court allowed the Borough to intervene, "but only for the purpose of asserting its own interests in real property of [Offshore], not the interests presently asserted by the State." The superior court later clarified that the Borough's participation was limited to whether the 1980 patent reserved a valid public access easement over Section 36. Offshore denied the existence of a public right-of-way over its property and counterclaimed for a declaratory judgment quieting title to its property.

All parties filed cross-motions for summary judgment disputing, among other things, whether the original Nikishka Beach Road had extended all the way to the shoreline, whether the 1959 federal deed conveyed a valid public right-of-way over that road to the State, and whether the State and Borough could enforce the public access easement reserved in the 1980 patent after the Borough failed to plat the easement as required under the patent.

The superior court granted summary judgment in part, ruling that Nikishka Beach Road was a public road under the 1966 highway right-of-way permit ADL 32264, which stopped short of the "Y" intersection where the beach access road and dock access road travel from the bluff down to the beach. But the superior court determined that two questions of fact remained: whether a public right-of-way extended from that point down to the beach under the 1959 deed, and whether the Borough's failure to plat the public access easement reserved in the 1980 patent extinguished the easement.

Following an eight-day trial, where witnesses testified to the facts described above, the superior court ruled that the 1959 federal deed conveyed a valid public right-of-way to the State and that the original Nikishka Beach Road, as described in the 1959 deed and 1960s leases, extended all the way to the shoreline traveling in a northeasterly direction from the bluff down to the beach. However, the court found that Arness had shifted the location of the original road when he constructed the dock access road and that the public began using that road to access the beach instead. The original road then "fell into disrepair and became overgrown." When Offshore rebuilt the dock facilities and constructed the beach access road, that road became "the primary and only means of approach to the north beach" because Offshore's newly constructed warehouse prevented the public from accessing the north beach from the dock. The court concluded that these shifts in location did not extinguish the right-of-way and that the beach access road was a continuation of the original Nikishka Beach Road.

Alternatively, the superior court ruled that the State had reserved a separate public access easement to and along the shoreline in the 1980 patent conveying Section 36 to the Borough, and that the Borough's failure to plat this easement did not extinguish it. Therefore, the court concluded, Offshore took title from the Borough subject to this public access easement. The court then located the easement over Nikishka Beach Road, including both the beach access road and the dock access road, because Offshore's dock prevented the public accessing both the north and south beach from either road alone. Finally, the superior court ruled that the public had also established a prescriptive easement over both the beach access road and the dock access road.

Consequently, the superior court entered a final judgment in favor of the State and the Borough. The court also granted the Borough's request for attorney's fees, over Offshore's objections that the Borough was not a prevailing party and the amount of fees requested was unreasonable.

Offshore appeals, challenging the superior court's rulings that a public right-of-way or easement exists over Nikishka Beach Road under the 1959 deed, the 1980 patent, or by

prescriptive easement. Offshore also challenges the superior court's award of attorney's fees to the Borough.

## III. STANDARD OF REVIEW

We review the superior court's factual findings for clear error, which occurs when a review of the entire record leaves us with a definite and firm conviction that a mistake has been made.[4] We review the superior court's legal conclusions de novo.[5]

When interpreting a deed, we first look to the four corners of the document to determine the parties' intent.[6] If the deed is open to only one reasonable interpretation, our analysis ends there.[7] If the deed is ambiguous, we will then consider the facts and circumstances surrounding the conveyance.[8] If the parties' intent is still unclear after examining extrinsic evidence, we will consider rules of construction.[9]

Finally, we review the superior court's prevailing party determination and award of attorney's fees for an abuse of discretion.[10]

## IV. DISCUSSION

### A. Public Access Easement Under The 1980 State Patent

#### 1. The State and Borough were not barred from enforcing this easement by laches or estoppel.

As a threshold matter, Offshore argues that the doctrines of laches and quasi estoppel bar the State and Borough from attempting to enforce the public access easement reserved under the 1980 patent. We disagree.

The doctrine of laches "creates an equitable defense when a party delays asserting a claim for an unconscionable period."[11] To bar a claim under laches, "[a] court must find both an unreasonable delay in seeking relief and resulting prejudice to the defendant."[12] "Laches is usually invoked to bar a claim because the plaintiff has unreasonably delayed seeking relief or protecting a known right."[13] The superior court has "broad discretion to sustain or deny a defense based on laches."[14]

Here, the superior court rejected Offshore's laches argument on summary judgment, ruling:

> Under the circumstances, the State is correct that the wrong for which [it] complained occurred when [Offshore] blocked access to the beach.... The State and [Borough] had reason to believe that the public possessed a right-of-way over the Nikishka Beach Road to the beach. Moreover, the parties were under the belief that numerous legal documents recognized the right-of-way. The State and [Borough], therefore, were not under an affirmative obligation to sue for the recognition of easements which they already believed to be recognized by [Offshore].

This ruling was not an abuse of the superior court's discretion. In *Keener v. State*, property owners argued that laches barred the State's claim to a 50–foot right-of-way under a 1955 patent.[15] We held that "the State

**4.** *Labrenz v. Burnett*, 218 P.3d 993, 997 (Alaska 2009).

**5.** *Id.*

**6.** *Dias v. State, Dep't of Transp. & Pub. Facilities*, 240 P.3d 272, 274 (Alaska 2010).

**7.** *Id.*

**8.** *Id.*

**9.** *Id.*

**10.** *Fernandes v. Portwine*, 56 P.3d 1, 4–5 (Alaska 2002).

**11.** *State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell*, 8 P.3d 351, 358–59 (Alaska 2000)

(quoting *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 457 (Alaska 1974)).

**12.** *Id.*

**13.** *Id.* at 359; *see also Keener v. State*, 889 P.2d 1063, 1067 (Alaska 1995) ("The period of delay for laches begins to run when the party discovers or could have discovered the wrong of which he complains or where, in light of any resulting prejudice to the defendant, it became reasonable to expect the plaintiff to act upon the wrong.").

**14.** *Keener*, 889 P.2d at 1066.

**15.** *Id.*

does not have to sue to establish its ownership of the right of way simply because problems might arise," and that "the challenge to the right of way rather than the issuance of the 1955 patent began the period of delay." [16] Similarly, Offshore's challenge to the public's right to use Nikishka Beach Road to access the beach in 2007 triggered the applicable laches period. The State and Borough filed their complaints in 2008. There was no unreasonable delay.

Quasi estoppel "precludes a party from taking a position inconsistent with one he or she has previously taken where circumstances render assertion of the second position unconscionable." [17] The superior court also has "broad discretion to deny the application of estoppel." [18]

Offshore argues that the highway permit ADL 32264 "represented a continuing representation of the end of the right-of-way of [Nikishka] Beach Road," and that Offshore has been prejudiced because it relied on this representation by constructing substantial improvements on what it believed was private property. The superior court rejected this argument, finding "[t]here was no evidence of an unconscionable act or representation by the State or Borough." This ruling was not an abuse of the court's discretion. Highway permit ADL 32264, which ends short of the beach, is not inconsistent with the State's current position that an additional public right-of-way extends over Nikishka Beach Road under the 1980 patent.

### 2. The public access easement was not conditioned on the Borough's duty to locate and plat the easement.

Article VIII, section 14 of the state constitution provides that "[f]ree access to the navigable or public waters of the State ... shall not be denied ... except that the legislature may by general law regulate and limit such access for other beneficial uses or public purposes." Under AS 38.05.127, the State is required to reserve public access easements to and along navigable bodies of water before selling, leasing, or otherwise disposing of state land adjacent to such bodies of water. The 1980 patent conveying Section 36 from the State to the Borough provided that the conveyance was subject to a 50–foot–wide perpetual public easement to and along the ordinary high water mark of Cook Inlet:

> Subject to the reservation of a 50 foot wide lineal perpetual public easement along the line of the ordinary high water mark of Cook Inlet and other unnamed bodies of water as portrayed on the official township survey plat for Township 8 North, Range 12 West, Seward Meridian, Alaska, examined and approved by the U.S. Surveyor General's Office in Juneau, Alaska on June 12, 1923, *and further subject to the reservation of a 50 foot wide perpetual public access easement to the aforementioned lineal public easement along the above bodies of water.*

(Emphasis added). The patent also required the Borough to identify and plat this easement:

> Said public access easement shall be identified by the Grantee and shall be subject to the covenant that no development or conveyance shall occur on the land conveyed by this patent until the Grantee has platted such easements and formally notified the Grantor of the location of such public access easements. The Borough failed to comply with this requirement. Offshore argues that this provision imposed an executory obligation on the Borough to identify and plat the easement, and that no easement can exist under the patent until the Borough fulfills that duty.

As previously discussed, when interpreting a deed we first look to the four corners of the document to determine the parties' intent.[19] Only if the deed is ambiguous do we consider the facts and circumstances surrounding the

16. *Id.* at 1067 (emphasis omitted).

17. *Id.* (quoting *Dressel v. Weeks,* 779 P.2d 324, 329 (Alaska 1989)).

18. *Cizek v. Concerned Citizens of Eagle River Valley, Inc.,* 49 P.3d 228, 233 n. 13 (Alaska 2002).

19. *Dias v. State, Dep't of Transp. & Pub. Facilities,* 240 P.3d 272, 274 (Alaska 2010).

conveyance and, lastly, rules of construction.[20]

Here, the 1980 patent first reserves a 50–foot wide *perpetual* public easement to and along the ordinary high-water mark of Cook Inlet and then requires the Borough to identify and plat the specific location of the easement. Nothing in the patent's language suggests that the existence of the easement is conditioned upon the Borough's duty to identify and plat its location. We conclude the patent's reservation of a perpetual 50–foot wide public easement is unambiguous.

Even if this language were ambiguous, however, facts and circumstances surrounding the conveyance indicate that the State did not intend to create an easement conditioned on the Borough's duty to fix a location. Prior to conveying Section 36 to the Borough, the State issued a public notice of the proposed conveyance, stating: "The lands approved for conveyance by this decision are subject to the reservation of a 50–foot wide perpetual public easement, as required by AS 38.05.127 and regulations implementing that statute, to and along each navigable and public body of water. . . ." The public notice also stated that "no such easement may be vacated, abandoned or otherwise extinguished or rendered incapable of reasonable use by the public for the purposes for which it was reserved without the approval of the grantor. . . ." This public notice described the easement in the present tense, implying it was not conditioned upon some future action by the Borough, and stated the easement could not be extinguished without the State's approval. This extrinsic evidence shows the State intended to establish a present easement under the 1980 patent, not a conditional future easement.

Additionally, rules of construction support the conclusion that the 1980 patent reserved

a valid public access easement that was not conditioned upon the Borough's duty to fix a location for the easement. First, we have previously recognized the general rule that failure to specify the location of an easement in a deed or instrument does not necessarily affect the validity of the easement:

> The law appears to be settled that where the width, length and location of an easement for ingress and egress have been expressly set forth in the instrument the easement is specific and definite. . . . If, however, the width, length and location of an easement for ingress and egress are not fixed by the terms of the grant or reservation the dominant estate is ordinarily entitled to a way of such width, length and location as is sufficient to afford necessary or reasonable ingress and egress.[21]

Thus, the fact that the 1980 patent did not specify a location for the public access easement does not mean the patent failed to convey a valid easement.

Furthermore, a conditional easement must be created by express terms or clear implication. In *Davidson v. Ellis*, a case similar to the case before us, landowners conveyed part of their property to a purchaser along with a perpetual easement across the property "to be thereafter and within a reasonable time definitely located by [the purchaser]."[22] Although the purchaser never located the easement, the *Davidson* court held:

> The grant of the right of way by defendants was not one made upon condition, and nothing in the language of the grant indicates that a failure to fix the definite route should work a forfeiture of the right of way. "Conditions subsequent, when relied on to work a forfeiture, must be created by express terms or clear implica-

---

**20.** *Id.*

**21.** *Andersen v. Edwards*, 625 P.2d 282, 286 (Alaska 1981) (quoting *Aladdin Petroleum Corp. v. Gold Crown Props.*, 221 Kan. 579, 561 P.2d 818, 822 (1977)) (addressing the scope of use permitted by an easement, however, not the existence or location of that easement); *see also* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.8 (2000) ("Except where the location and dimensions are determined by the instrument or circumstances

surrounding creation of a servitude, they are determined as follows: (1) The owner of the servient estate has the right within a reasonable time to specify a location that is reasonably suited to carry out the purpose of the servitude. (2) The dimensions are those reasonably necessary for enjoyment of the servitude.").

**22.** 9 Cal.App. 145, 98 P. 254, 255 (1908).

tion." [23]

We have also stated that "'the intent to create a condition subsequent must appear expressly or by clear implication' if such a condition is to be found." [24] Because the 1980 patent did not expressly require or clearly imply that the existence of the reserved public access easement was conditioned on the Borough's duty to locate and plat the easement, we will not read such a provision into the patent. Accordingly, the 1980 patent established a valid public access easement.

3. **The superior court had the authority to determine the location of the public access easement, and the location that the court chose was reasonable.**

■ Offshore also argues that AS 38.05.127, the statute requiring the State to preserve public access easements to and along navigable bodies of water, does not authorize a superior court to declare the location of such easements. Alaska Statute 38.05.127(a) provides that before the sale of state land adjacent to a body of water, the Commissioner of the Department of Natural Resources shall "determine if the body of water ... is navigable water, public water, or neither" and "upon finding that the body of water or waterway is navigable or public water, provide for the specific easements or rights-of-way necessary to ensure free access to and along the body of water...." [25] Although this statute does not expressly authorize a trial court to determine the location of a public access easement, the general rule is where an instrument such as a deed expressly reserves an easement but does not specify the location of that easement, the superior court has the authority to determine a location if the parties fail to locate it themselves. The *Restatement (Third) of Property: Servitudes* provides that when the location of an easement is not specified by the instrument that creates it, and the parties fail to establish a location within a reasonable amount of time, "the parties may resort to legal proceedings in which a location should be selected that strikes a balance between minimizing the damage to the servient estate and maximizing the utility to the owner of the servitude." [26] In *Fitzgerald v. Puddicombe*,[27] we recognized that when a valid easement exists but its location is not fixed, the superior court may determine the location. In that case, we held that a public right-of-way existed across a parcel of land under a federal statute authorizing the construction of highways over public lands not reserved for public uses; we then remanded to the superior court "for a determination of the precise location and extent of the right-of-way." [28] Other jurisdictions have also held that when a deed coveys an easement but fails to locate it, a court may determine the location of the easement.[29]

■ Here, the State did not designate a location for the public access easement in the 1980 patent and the Borough did not locate and plat the easement, as it was required to do under the patent. The parties resorted to this legal proceeding to determine the validi-

**23.** *Id.* (quoting *Behlow v. S. Pac. R.R. Co.*, 130 Cal. 16, 62 P. 295, 295 (1900)).

**24.** *State v. Allen*, 625 P.2d 844, 848 (Alaska 1981) (quoting *Lowe v. Copeland*, 125 Cal.App. 315, 13 P.2d 522, 525 (1932) (addressing whether a contract was subject to a condition subsequent)).

**25.** *See also* AS 38.05.965(3). Nothing in the record indicates that the Department of Natural Resources ever made these findings before the State conveyed Section 36 to the Borough.

**26.** RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.8, cmt. b at 560 (2000).

**27.** 918 P.2d 1017 (Alaska 1996).

**28.** *Id.* at 1022.

**29.** *See, e.g., Adair v. Kona Corp.*, 51 Haw. 104, 452 P.2d 449, 455 (1969) ("'[W]here an easement is not definitely located in a grant or a reservation, and the dominant and servient owners fail to agree, a court may locate it in the exercise of its equity powers.");

*Joseph Giddan & Sons v. Northbrook Trust & Sav. Bank*, 151 Ill.App.3d 537, 103 Ill.Dec. 440, 501 N.E.2d 757, 760 (1986) ("'Where an easement by deed is undefined as to location and width, these details can be ascertained and fixed by the court.'"); *Wood v. Wilson*, 260 Mass. 412, 157 N.E. 592, 593 (1927) ("The law is settled that if the bounds of a way are not located by the deed which creates it, the parties may fix the location upon the servient premises, and, if they do not, a court may do so.'").

ty and location of this public access easement. Under these circumstances, we hold that the superior court had the authority to determine a location for the easement.

 Offshore also argues that the 1980 patent applied to all of Section 36, and therefore this public access easement does not necessarily need to be located on Offshore's property. We affirm the location selected by the superior court. The public has used Nikishka Beach Road to access the beach since the 1950s. Both the 1959 federal deed conveying Nikishka Beach Road to the State and the 1960s leases between the State and Arness gave notice that Offshore's property had been and was potentially still burdened with a public easement for access to the beach. Given these factors, the superior court's ruling that the public access easement should be located over Nikishka Beach Road was reasonable. The court's ruling that this easement extends over both the beach access road and the dock access road was also reasonable, given the court's finding that Offshore's dock prevents the public from traversing the beach along the shoreline. Two points of access are therefore necessary to provide access to the beach on either side of the dock. However, we note that nothing in our decision today prevents Offshore and the Department of Natural Resources from changing the location of this public access easement if they agree to a different route or access point, provided that the public can still reasonably access both beaches.

### B. Attorney's Fees

 Offshore also appeals the superior court's award of attorney's fees to the Borough, challenging both the superior court's prevailing party determination and the amount of attorney's fees. The superior court ruled, over Offshore's objection, that the Borough was a prevailing party, reasoning:

> The Borough moved to intervene alleging several claims for relief, some of which were similar to the claims asserted by the

State in its action for declaratory judgment. . . . [Offshore] did not object to the Borough's intervention on the limited issue of asserting its own claim for a public access easement pursuant to its deed to [Offshore]. The court granted the Borough's motion to intervene solely for the purpose of asserting its own interests in the real property in dispute. . . . Ultimately, the court found, among other things, that the public access easement described in the State's patent survived the conveyance from the Borough to [Offshore], and that a 50 [foot] wide public access easement existed to the mean high water line of Cook Inlet. Thus, the Borough prevailed on this issue. . . .

This prevailing party determination was not an abuse of the superior court's discretion. As the court observed, it allowed the Borough to intervene on the "limited issue" of whether the 1980 patent established a valid public access easement over Section 36 that then survived the conveyance of Lots 1, 2, and 3 from the Borough to Offshore, and the Borough prevailed on this issue.

 However, the court then ruled that even though "the Borough's involvement was limited to the issue of public access easements under the State patent" there was "no way for the court to parse out those portions of the trial that pertained solely to public use easements." Therefore, the court granted the Borough's request for an award of 30% of its total actual fees under Alaska Rule of Civil Procedure 82.[30]

Offshore challenges this award of attorney's fees, arguing that many of the Borough's arguments were duplicative of the State's arguments at trial. The Borough responds that even though its participation was limited to arguing the issue of the public access easement under the 1980 patent, that issue "required an examination of the entire chain of title in order to reasonably understand the significance of the conveyance documents."

---

30. That rule provides: "In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred. . . ." Alaska R. Civ. P. 82(b)(2).

The superior court awarded the Borough 30% of its total attorney's fees because the court could not "parse out those portions of the trial that pertained solely to" the limited issue of a public access easement under the 1980 patent, not because the court found that all of the Borough's arguments were reasonably related to that issue. It was not the superior court's duty to "parse" the record to ascertain which fees were reasonably related to the Borough's limited intervention—this was the Borough's burden of proof. The superior court's order implicitly concluded that the Borough did not meet its burden of proof (because the court was unable to determine which of the Borough's fees related to its limited issue and which related to other issues), but the court nevertheless awarded the Borough 30% of all of its attorney's fees. This was an abuse of discretion, and we reverse and remand for further proceedings on the Borough's attorney's fees calculation. On remand the Borough must segregate its fees and demonstrate which are reasonably related to the limited issue of the public access easement under the 1980 patent. If the Borough cannot meet its burden of demonstrating which fees are reasonably related to its limited intervention, then it is not entitled to attorney's fees.[31]

## V. CONCLUSION

We AFFIRM the superior court's ruling that the 1980 patent from the State to the Borough reserved a valid 50–foot wide public access easement to the shoreline of Cook Inlet and that this easement is located over Nikishka Beach Road, including both the beach access road and the dock access road. We REVERSE the award of attorney's fees to the Borough and REMAND for the Borough to demonstrate which fees are reason-ably related to its limited participation in this case.

CHRISTEN, Justice, not participating.

---

**31.** Offshore also argues that it is entitled to a judgment quieting title to its property under several specific easement theories that were either resolved in Offshore's favor at trial or were not specifically addressed in the superior court's final ruling, and requests that we remand for the court to revise the judgment. The superior court's final ruling is binding on the parties, regardless of whether each specific theory and argument is mentioned in the final judgment, and relitigation of any issues that the parties raised or could have raised in this proceeding are now barred by res judicata. *See Larson v. State,* 254 P.3d 1073, 1077 (Alaska 2011) ("Res judicata precludes relitigation by the same parties, not only of claims raised in the first proceeding, but also those relevant claims that could have been raised." (internal citations and quotation marks omitted)). Offshore has not demonstrated that it is necessary to revise the judgment.